**PUBLISH**

**F I L E D**
**United States Court of Appeals**
**Tenth Circuit**

**OCT 20 1997**

**PATRICK FISHER**
**Clerk**

**UNITED STATES COURT OF APPEALS**

**FOR THE TENTH CIRCUIT**

---

UNITED STATES OF AMERICA,

      Plaintiff - Appellee,

v.

WILLIE RAY LAMPLEY, a/k/a
Ray Lampley,

      Defendant - Appellant,

and

CECILIA LAMPLEY; LARRY WAYNE
CROW; and JOHN DARE BAIRD, a/k/a
J. D. Baird,

      Defendants.

Nos. 96-7074
97-7016

---

UNITED STATES OF AMERICA,

      Plaintiff - Appellee,

v.

CECILIA LAMPLEY,

      Defendant - Appellant,

and

WILLIE RAY LAMPLEY, a/k/a Ray
Lampley; LARRY WAYNE CROW; and
JOHN DARE BAIRD, a/k/a J. D. Baird,

      Defendants.

Nos. 96-7075
97-7010

UNITED STATES OF AMERICA,

      Plaintiff - Appellee,

v.

JOHN DARE BAIRD, a/k/a J. D. Baird,

      Defendant - Appellant.

No. 96-7077

———————————

**APPEALS FROM THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF OKLAHOMA
(D.C. No. 95-CR-63-S)**

———————————

John C. "Jay" Williams III, Muskogee, Oklahoma, for Defendant-Appellant Willie Ray Lampley in No. 96-7074.

(Willie Ray Lampley, *pro se*, submitted on the brief in No. 97-7016.)

Mark Green, Muskogee, Oklahoma, for Defendant-Appellant Cecilia Lampley in No. 96-7075.

(Cecilia Lampley, Fort Worth, Texas, *pro se*, submitted on the brief in No. 97-7010.)

Gene V. Primomo (James G. Wilcoxen of Wilcoxen, Wilcoxen & Primomo with him on the brief), Muskogee, Oklahoma, for Defendant-Appellant John Dare Baird in No. 96-7077.

Douglas Adam Horn, Assistant United States Attorney (John Raley, United States Attorney, and D. Michael Littlefield, Assistant United States Attorney, with him on the briefs), Eastern District of Oklahoma, Muskogee, Oklahoma, for Plaintiff-Appellee United States of America.

———————————

2

Before **SEYMOUR**, Chief Judge, **McKAY**, and **MURPHY**, Circuit Judges.

_____

**McKAY**, Circuit Judge.

_____

This opinion consolidates for the purpose of disposition the appeals of three related cases.[1] Defendants Mr. Willie Ray Lampley; his wife, Mrs. Cecilia Lampley; and Mr. John Dare Baird were convicted of conspiring to knowingly make and possess a destructive device and maliciously damage and destroy, by means of fire or explosives material, a building and other real and personal property used in interstate commerce and used in an activity affecting interstate commerce in violation of 18 U.S.C. §§ 2, 371, and 844(i), and 26 U.S.C. §§ 5822, 5841, 5845, 5861(d) & (f), and 5871. Mr. Lampley and Mr. Baird also were convicted of the use or carrying of a firearm during and in relation to the commission of a crime of violence, the predicate offense of conspiracy, pursuant to 18 U.S.C. § 924(c)(1). Mr. Lampley also was convicted of solicitation of a government informant to commit a crime of violence against the United States, in violation of 18 U.S.C. §§ 2, 373, and 844(i). These convictions stemmed from

_____

[1] Mr. Lampley appeals his convictions, Nos. 96-7074 and 97-7016; Mrs. Lampley appeals her conviction, Nos. 96-7075 and 97-7010; and Mr. Baird appeals his convictions, No. 96-7077. Defendants were tried together in district court and argued their appeals in this court on the same day.

3

Defendants' endeavors to build and possess an explosive device to damage or destroy the Anti-Defamation League building in Houston, Texas, and the Southern Poverty Law Center in Montgomery, Alabama. These activities took place between August and November 1995. On appeal, each defendant alleges numerous grounds for reversal. We address each allegation in turn, but consolidate those arguments common to the defendants. We exercise jurisdiction pursuant to 28 U.S.C. § 1291 and affirm.

## I.

Defendants Mr. Lampley, Mrs. Lampley, and Mr. Baird submit that their Sixth Amendment right to a fair trial by an impartial jury was unduly prejudiced by the influence of the April 19, 1995 bombing of the Alfred P. Murrah Federal Building in Oklahoma City, Oklahoma. The details of their claim are: The trial coincided with the one-year anniversary of the Oklahoma City bombing; the corresponding presence of security forces was excessive and media publicity pervasive; a memorial wreath was placed on the courthouse door, and a memorial sign was in the window of a Federal Protective Service vehicle parked in front of the courthouse; and statements relating to the Oklahoma City bombing were admitted into evidence.

4

**A.** There is no dispute that Defendants were tried during the general anniversary period of the Oklahoma City bombing.[2] However, Defendants failed to make any objection to the timing of the trial on the basis that it would coincide with the one-year anniversary of the Oklahoma City bombing.[3] There is no evidence in the record that Defendants made any request for a change of venue or any request for a delay due to this circumstance. We, therefore, apply a plain error analysis. Fed. R. Crim. P. 52(b); United States v. Atkinson, 297 U.S. 157, 160 (1936). The plain error rule requires there be "an 'error,' that is 'plain,' and that 'affect[s] [the defendant's] substantial rights.'" United States v. Olano, 507 U.S. 725, 732 (1993) (quoting Fed. R. Crim. P. 52(b)). In Johnson v. United States, ___ U.S. ___, 117 S. Ct. 1544 (1997), the Supreme Court clarified the analysis by confirming that a court should invoke its remedial discretion to notice a forfeited error only if that error "'seriously affect[s] the fairness, integrity or

_____

[2] The trial began on April 1, 1996, and ended on April 24, 1996.

[3] Like many trials, the timing of this trial was an ever-changing entity. The original jury trial date was set for January 3, 1996. Defendants moved for, and were granted, a continuance on December 12, 1995, so they could properly deal with the large volume of discovery documents in preparation for trial. On December 22, 1995, the district court reset the jury trial for January 22, 1996. On January 18, 1996, the court ordered that the jury trial date of January 22, 1996, be stricken, over objections by Defendants. The government made a motion on February 12, 1996, for an order to set the jury trial for March 4, 1996. The court denied this motion, explaining that a March 4, 1996 trial setting would not be feasible due to the need for additional time to implement and coordinate increased safety and security measures. Instead, the jury trial was set for April 1, 1996.

5

public reputation of judicial proceedings.'" Id. at 1550 (citation omitted) (quoting Atkinson, 297 U.S. at 160).

Defendants' trial began on April 1, 1996, in the Eastern District of Oklahoma. On April 12, 1996, the trial was recessed until April 22, 1996. On April 24, 1996, a jury deliberated and returned guilty verdicts on all counts for each defendant. There is no evidence in the record that the government had any control over the timing of this trial or that the district court had any intent to hold Defendants' trial during the anniversary of the Oklahoma City bombing. In fact, the record suggests the contrary. The government made a motion on February 12, 1996, for an order to set the jury trial for March 4, 1996. The district court denied this motion for the reason that it needed "additional time to implement and coordinate increased safety and security measures." R., Vol. I, Exh. 189. Additionally, on April 1, 1996, the district court told the lawyers, defendants, and potential jury that it hoped to shorten the expected duration of the trial to two weeks by working longer days and taking shorter recesses. A two-week trial would have ended around April 12, 1996. There is insufficient evidence to suggest that the trial's timing was anything other than coincidental. Defendants have not cited facts in the record sufficient to show either that their substantial rights were prejudiced or that the fairness, integrity, or reputation of the judicial

proceeding was seriously affected. We conclude that their claims do not rise to the level of plain error.

However, while we have disposed of the issue of intent, the critical issue is the effect of the Oklahoma City bombing on the jury. The district court is responsible for guaranteeing that the jury is fair and impartial. See Frazier v. United States, 335 U.S. 497, 511 (1948). It is a well-established principle that "one accused of a crime is entitled to have his guilt or innocence determined solely on the basis of the evidence introduced at trial, and not on grounds of official suspicion . . . or other circumstances not adduced as proof at trial." Taylor v. Kentucky, 436 U.S. 478, 485 (1978). Where Defendants raised in the district court specific objections to the effect of the Oklahoma City bombing, we will review that court's constitutional findings *de novo.* United States v. Al-Smadi, 15 F.3d 153, 154 (10th Cir. 1994) (citing Nieto v. Sullivan, 879 F.2d 743, 749-54 (10th Cir.)), cert. denied, 493 U.S. 957 (1989).

**B.** Defendants contend that the security measures and number of officers present in the courtroom and courthouse during the trial were excessive and prejudiced their right to a fair trial in violation of Holbrook v. Flynn, 475 U.S. 560 (1986). This specific allegation was raised in the district court, and we therefore review *de novo*. In Holbrook, the Supreme Court defined the standard

7

by which security presence in the courtroom may be measured in relation to a defendant's constitutional right to a fair trial. <u>Holbrook</u> states:

> All a . . . court may do . . . is look at the scene presented to jurors and determine whether what they saw was so inherently prejudicial as to pose an unacceptable threat to defendant's right to a fair trial; if the challenged practice is not found inherently prejudicial and if the defendant fails to show actual prejudice, the inquiry is over.

<u>Id.</u> at 572. The Court determined that "the conspicuous, or at least noticeable, deployment of security personnel in a courtroom during trial" is not an inherently prejudicial practice and does not violate the fundamental principles of the criminal justice system. <u>Holbrook</u>, 475 U.S. at 568-69. The Court noted that guards have become commonplace in most public places "so long as their numbers or weaponry do not suggest particular official concern or alarm." <u>Id.</u> at 569; <u>see</u> <u>Hopkinson v. Shillinger</u>, 866 F.2d 1185, 1218 (10th Cir. 1989) (security measures including armed and unarmed guards and magnetometer were not so inherently prejudicial as to pose unacceptable threat to defendant's right to fair trial), <u>cert. denied</u>, 497 U.S. 1010 (1990).

The facts of this case do not support a claim that the <u>Holbrook</u> standard was violated. In recognizing the presence of security measures, the trial judge specifically stated that "certain precautions . . . have to be taken to protect the people who work [in the courthouse] and to protect [the lawyers]." R., Vol. XV at 542. The judge noted, to clarify the record, that there were not "that many

8

Marshals up here in front of the rail," and that he could distinguish the marshals in the back of the courtroom from spectators or press only because he had met them.  Id.  Unlike the state troopers involved in Holbrook, the marshals in the back of the courtroom were in plain clothes and unarmed.  The judge found that the scene presented to the jurors was not so inherently prejudicial as to impair Defendants' right to a fair trial.  This finding is not erroneous.  Moreover, Defendants do not cite facts in the record that are sufficient to show actual prejudice.  We will not presume prejudice where the record does not support a claim of inherently prejudicial activity or incident.

**C.**  Defendants also contend that the excessive publicity surrounding the anniversary of the Oklahoma City bombing denied them a fair trial.  As noted above, Defendants failed to object or move for a change of venue prior to the trial's commencement, despite their knowledge that the trial would last approximately three weeks and would coincide with the anniversary of the Oklahoma City bombing.  However, we review *de novo* because Defendants raised the issue affecting their constitutional rights on April 22, after the trial's recess.

The facts in the record do not support Defendants' suggestion that the jury did anything other than follow the court's admonitions to not discuss the case

9

with anyone, to refrain from viewing any publication or broadcast relating to the case, and to remain impartial. According to the record, after the trial's recess the district court made a general query of the jurors concerning any influence that might have affected their impartiality.[4] The record shows that the jurors did not express any doubt about their ability to remain impartial or any concern about the publicity surrounding this case or the Oklahoma City bombing anniversary. Additionally, the record does not suggest that the district court improperly relied on the fundamental principle that the jurors would abide by the court's instructions and admonitions and remain impartial. See Richardson v. Marsh, 481 U.S. 200, 206 (1987) (endorsing "the almost invariable assumption of the law that jurors follow instructions"); Francis v. Franklin, 471 U.S. 307, 324 n.9 (1985) ("The Court presumes that jurors . . . attend closely . . . , strive to understand, . . . and follow the [trial court's] instructions" in a criminal case.). The trial court did not err in finding that the media coverage of this case and the Oklahoma City bombing anniversary did not deny Defendants a fair trial.

**D.** Defendants further argue that a memorial wreath on the courthouse door on April 22, 1996 (undoubtably seen by the jurors), and a memorial sign in the window of a Federal Protective Security vehicle parked in front of the courthouse

---

[4] *See infra* Part I.D.

10

on April 22, 1996 (probably visible to the jurors), unfairly prejudiced the jury and denied them a fair trial.[5] When defense counsel brought the existence of the wreath and the sign to the court's attention, the judge instructed the Assistant United States Attorney, "as an officer of this Court, . . . to see that there aren't any subtle harpoons out there that you can help prevent." R., Vol. XXIII at 2524. In effect, the judge immediately directed that any possibly offending items be removed from the realm of the trial.

The record also reflects a discussion between the trial judge and counsel about the form of inquiry to the jurors concerning these items. The judge faced the dilemma of how to make a proper inquiry without further drawing attention to the Oklahoma City bombing. He opted to make a general inquiry. He asked the jurors if they had seen, heard, or experienced anything that now would prevent them from being fair and impartial, either to the defendants or the government. The jurors did not indicate that their impartiality had been tainted. Additionally, the record shows that the judge allowed the defense and prosecution to voir dire the jurors during jury selection and that he made regular admonitions to the jury to abide by their oaths and remain impartial and fair while all the evidence was presented. Our review of the record leads us to conclude that the trial court's

---

[5] According to the record, these two items were present only on April 22, 1996, the day the trial resumed after its recess.

11

handling of the matter was not erroneous. We cannot say as a matter of law that the jury was unduly influenced by the wreath or the sign.

**E.** Finally, Defendants contend that the district court erroneously admitted evidence that referred to the Oklahoma City bombing. We review the admissibility of evidence for an abuse of discretion because evidentiary rulings are committed to the discretion of the trial court. Cartier v. Jackson, 59 F.3d 1046, 1048 (10th Cir. 1995); United States v. Davis, 40 F.3d 1069, 1073 (10th Cir. 1994), cert. denied, 514 U.S. 1029, 1088 (1995)). The primary statement in question was made by Mr. Lampley upon his arrest. A government witness, FBI Agent Mr. Rayburn Collins, testified to the content of this statement at trial. When asked upon his arrest if he agreed with the Oklahoma City bombing, Mr. Lampley replied that he did not agree with the target. Defendants assert that this statement was unfairly prejudicial and had no probative value under a Federal Rule of Evidence 403 analysis, and thus denied them a fair trial. The government argues that the statement is relevant and probative because "it shows certain concerns or motivations that [co-defendant Mr. Lampley] had toward doing the acts that he [allegedly] did." R., Vol. XVI at 601. The district court overruled Defendants' objection, finding the statement not hearsay because it constituted an admission by a party, and finding its probative value outweighed any prejudicial

12

effect. We conclude the district court did not abuse its discretion by admitting this statement into evidence. In sum, we hold that the matters complained of neither individually nor collectively denied Defendants' right to a fair trial.

## II.

Mr. Lampley claims he was denied his Sixth Amendment right to a public trial. He argues that the courtroom was restricted on the first day of trial in a manner that denied him his right to a public trial. Defendant did not make a contemporaneous objection but raised the issue on the second day of trial. We review the district court's underlying factual findings for clear error and the application of any legal principles *de novo*. Al-Smadi, 15 F.3d at 154. The right to a public trial "has always been recognized as a safeguard against any attempt to employ our courts as instruments of persecution." In re Oliver, 333 U.S. 257, 270 (1948). This court has determined that "[t]he denial of a defendant's Sixth Amendment right to a public trial requires some affirmative act by the trial court meant to exclude persons from the courtroom." Al-Smadi, 15 F.3d at 154.

The record does not support the conclusion that the trial court violated the Al-Smadi rule. The chief activity on the first day of trial was the selection of the jury. There is no evidence in the record that any person was denied entry to the courtroom. There is some ambiguous evidence in the record which reflects that

13

spectators or press were in the courtroom on that first day: Prior to calling in the jury panel, the trial judge stated, "And you folks who are back in the back, you will have to make way for the jury." R., Vol. XIV at 22. This statement confirms that persons other than the jury, lawyers, defendants, judge, and court reporter were present in the courtroom. The record does not reflect that these persons were required to leave, and the defendant has not developed the record to the contrary. From the record, it does not appear that anyone, including defense counsel, was aware of anyone being excluded the first day of trial.

The only objection concerning a public trial was made by counsel for Mrs. Lampley at the end of the second day of trial, April 2, 1996. Counsel stated, "It's my understanding that if you're not in here by 8:30 or whenever you're supposed to be, that our United States Marshal has said you can't enter this courtroom, which in my opinion denies a public fair trial." R., Vol. XV at 541. Co-defendant Mr. Lampley joined in this objection. The trial judge responded: "I don't know anything about nobody being able to get in here. Somebody told me earlier that nobody could leave, but I've seen spectators and reporters and others leave here today." Id. at 542. Additionally, the judge mentioned that an artist was present first thing in the morning on April 2, and that eight artists and two reporters were present later in the day. Further, if the trial judge had so ordered, requiring people to be in their seats within a reasonable time is within his

14

managerial authority. See Bell v. Evatt, 72 F.3d 421, 433 (4th Cir. 1995) (preventing ingress and egress to courtroom did not violate public trial right where "trial judge was merely maintaining order in his courtroom and ensuring a non-disruptive atmosphere"), cert. denied, ___U.S.___, 116 S. Ct. 2533 (1996); United States v. Clark, 18 F.3d 1337, 1340-41 (6th Cir.) (avowing that the degree of security provided at trial is within sound discretion of trial judge), cert. denied, 513 U.S. 852 (1994); see also United States v. Collins, 109 F.3d 1413, 1418 (9th Cir. 1997) (noting "trial court 'has discretion to use shackles or other security measures when circumstances dictate'") (citation omitted), petition for cert. filed (U.S. June 25, 1997) (No. 97-5002); United States v. Brazel, 102 F.3d 1120, 1155-56 (11th Cir. 1997) (requiring identification from all persons entering courtroom did not deny defendant's right to public trial), petition for cert. filed, (U.S. June 11, 1997) (No. 97-5730); (U.S. June 18, 1997) (No. 96-9447); (U.S. Aug. 14, 1997) (No. 97-5754).

Mr. Lampley proffered no evidence in the record to contradict the judge's observations and implicit findings. He only proffered on appeal an anonymous newspaper article included as an appendix to his appellate brief. We conclude that this is insufficient on our own motion to remand for further development of the record when no attempt was made to develop the issue before the trial court. The trial judge concluded that there was no closure of the trial. We hold that this

15

finding is not clearly erroneous, and, therefore, do not reach the issue of whether the Sixth Amendment was violated.

### III.

Defendants Mr. Lampley and Mr. Baird contend that the evidence is insufficient under Bailey v. United States, ___U.S.___, 116 S. Ct. 501 (1995), to support their convictions beyond a reasonable doubt for use or carrying of a firearm during and in relation to the conspiracy. To sustain a conviction under 18 U.S.C. § 924(c)(1), the government must prove three elements: (1) the defendant committed the underlying crime; (2) the defendant "used" or "carried" a weapon; and (3) the use or carriage of the weapon was "during and in relation to" the conspiracy. United States v. Richardson, 86 F.3d 1537, 1546 (10th Cir.) (quoting United States v. Nicholson, 983 F.2d 983, 990 (10th Cir. 1993)), cert. denied, ___U.S.___, 117 S. Ct. 588 (1996). We review the sufficiency of the evidence *de novo*, viewing the evidence and the inferences therefrom in a light most favorable to the government, to determine if a reasonable jury could find beyond a reasonable doubt that the defendant was guilty. United States v. Voss, 82 F.3d 1521, 1524-25 (10th Cir.), cert. denied, ___U.S.___, 117 S. Ct. 226 (1996).

Neither Mr. Lampley nor Mr. Baird challenges the sufficiency of evidence for his conviction of the underlying crime of violence. They also do not contest

16

that the conspiracy charged in this case fits the definition of a crime of violence; the construction of an explosive device inherently involves a substantial risk that physical force will be used against the person or property of another.[6] The government argues the evidence is sufficient to show Defendants "carried" a firearm "during and in relation to" the conspiracy.[7] In Bailey, the Supreme Court distinguished the "use" prong of section 924(c)(1) from the "carry" prong. The Court, holding that a section 924(c)(1) conviction for "use" requires the defendant to "actively employ[] the firearm during and in relation to the predicate crime," did not define the "carry" prong but advised that "use" of a firearm does not subsume the "carry" prong. Bailey, 116 S. Ct. at 508-09. Additionally, we have noted that Bailey suggested that "neither storage nor possession of a gun, without more, satisfies the 'carry' prong." United States v. Spring, 80 F.3d 1450, 1464 (10th Cir.), cert. denied, ___U.S.___, 117 S. Ct. 385 (1996); see Bailey, 116 S. Ct. at 509.

To satisfy the "carry" prong, the government must prove the defendant (1) possessed a firearm through the exercise of dominion and control, and (2)

_____

[6] A conspiracy may function as the predicate crime for a section 924(c)(1) conviction. United States v. Abreu, 962 F.2d 1425, 1431 (10th Cir. 1992) (a 21 U.S.C. § 846 conspiracy), aff'd on remand, 997 F.2d 825 (10th Cir. 1993), cert. denied, 512 U.S. 1239 (1994). Section 924(c)(1) does not restrict predicate crimes to substantive crimes.

[7] We do not address the issue of "use" because the government concedes the evidence is not sufficient to meet the Bailey standard for either Mr. Lampley or Mr. Baird.

transported or moved a firearm "during and in relation to" the predicate offense.
See Richardson, 86 F.3d at 1548; Spring, 80 F.3d at 1465. Defendants do not
dispute that they physically carried a firearm while the conspiracy was ongoing.[8]
The issue is whether Mr. Lampley and Mr. Baird carried a firearm "during and in
relation to" the conspiracy pursuant to section 924(c)(1). The government must
prove that each "defendant availed himself of the weapon and that the weapon
'played an integral role' in the [underlying] offense." Richardson, 86 F.3d at
1548 (quoting Nicholson, 983 F.2d at 990). Essentially, we must determine
whether the evidence in the record is sufficient, as to both Mr. Lampley and Mr.
Baird, to establish a nexus between the carriage of the gun and the underlying
crime of conspiracy. Where, as here, the conspiracy never resulted in an
underlying substantive crime,[9] we are faced with a difficult task. Mere carrying

---

[8] The record shows that Mr. Lampley purchased four firearms, three SKS rifles and a .22 rifle, on August 20 and 22, 1995. He transported those firearms back to his residence. Mr. Lampley carried one SKS rifle during target practice on the informant's property in late August 1995. He also carried a firearm, in August 1995, out of his home to his yard where he pointed it at a plane overhead.

The record also confirms that Mr. Baird carried and held two firearms, a .38 caliber revolver and a .30 caliber carbine, during a conversation with the informant on November 10, 1995. Mr. Baird physically transported the revolver in a holster from his trailer to the location of the conversation outside. His fingerprints were on his firearms.

[9] In many of our cases, the underlying predicate crime for a conviction under section 924(c)(1) was a drug conspiracy. See United States v. Arias-Santos, 120 F.3d 271, 1997 WL 452254 (10th Cir. 1997) (convicted of conspiracy to possess with intent to distribute cocaine); Abreu, 962 F.2d at 1431 (convicted of conspiracy to distribute cocaine). The defendants convicted in these drug conspiracy cases were also convicted of

18

of the gun temporally to the conspiracy is not sufficient to meet the "during and in relation to" element. See id. at 1549. Some further nexus must be shown, such as an overt act of planning for, preparation for, or agreement to the conspiracy.

Mr. Lampley claims that he purchased the firearms for his self-defense in response to the FBI's notification of a death threat against him from the Texas Constitutional Militia. He argues that he only purchased the guns in order to protect himself against the death threat, one that he believed came from Jonathan Bernstein and the Anti-Defamation League, because the local sheriff did not have the resources to protect him. The record indicates that Mr. Lampley did purchase the firearms with the intent to arm himself and those around him, that he transported those weapons back to his residence, that he "went on a march" to do "some target practice" with an SKS rifle (R., Vol. XVII at 1130), that he pointed a weapon at a plane flying over his residence, and that he loaned one of his guns to the informant so the informant would be armed. The government argues that these activities constitute overt acts of planning and preparation "during and in

---

the underlying substantive offenses, perhaps making it easier to demonstrate a nexus between the use or carriage of a firearm and the conspiracy. See Arios-Santos, 1997 WL 452254 at *4; Abreu, 962 F.2d 1430-32; see also United States v. Washington, ___F.3d___, 1997 WL 614568 (6th Cir. 1997) (convicted of conspiracy to distribute crack cocaine and possession with intent to distribute crack cocaine); United States v. Jackson, 65 F.3d 631, 633-34 (7th Cir. 1995) (defendant Jackson convicted of conspiracy to distribute cocaine and cocaine possession, manufacturing, and distribution charges), rev'd in part sub nom. United States v. Lamb, 82 F.3d 420 (7th Cir. 1996) (reversing convictions for co-defendants under Bailey).

19

relation to" the conspiracy. More than one reasonable inference may be drawn from these activities relating to Mr. Lampley's firearms.[10] One reasonable inference is that Mr. Lampley purchased and utilized the firearms to plan and prepare for the strike force that would carry out the detonation of an explosive device. A jury, therefore, could reasonably infer from the collective facts in the record that a nexus existed between the underlying conspiracy and Mr. Lampley's carriage of the firearm.

Mr. Baird contends that he only expressed an intent to use his firearms in the future, thereby not meeting the Bailey standard,[11] and that he did not carry the guns "during and in relation to" the conspiracy. A review of the record discloses that on November 10, 1995, Mr. Baird had a discussion with the informant on Mr. Lampley's property. Mr. Baird had both of his weapons with him at this time. During the discussion, Mr. Baird displayed at least one weapon to the informant and demonstrated that he had taped together three 15-round clips of ammunition for easier and more effective use of his .30 caliber carbine. He explained to the informant how he would eliminate any threats and quickly kill many people with the forty-five rounds of ammunition. The government submits that this evidence is sufficient to show the weapon was an integral part of Mr. Baird's activities--to

---

[10] We conclude that Mr. Lampley's pointing a gun at a plane flying overhead is not an overt act committed "during and in relation to" the conspiracy.

[11] *See supra* note 7.

20

prepare the strike force necessary to deploy an explosive destructive device--"during and in relation to" the conspiracy. Collectively, this record evidence allows the jury to reasonably infer that a nexus existed between the underlying conspiracy and Mr. Baird's carriage of firearms. Taking the evidence and inferences therefrom in a light most favorable to the government, we hold that a reasonable jury could find beyond a reasonable doubt that both Mr. Lampley and Mr. Baird carried a firearm "during and in relation to" the conspiracy.

## IV.

Mr. Lampley also contends that the evidence is insufficient to support the jury verdict on the charge of solicitation to commit a violent crime. Title 18 U.S.C. § 372 makes it unlawful to conspire to induce any officer[12] of the United States to engage in conduct constituting a felony. We review the sufficiency of the evidence *de novo,* viewing the evidence and the inferences therefrom in a light most favorable to the government, to determine if a reasonable juror could find beyond a reasonable doubt that the defendant was guilty. Voss, 82 F.3d at 1524-25. Defendant testified that he was solicited and entrapped by the informant. Our

---

[12] There is no dispute that the informant qualifies as an officer because he was employed by the United States to gain the confidence of the co-conspirators in this case. See 18 U.S.C.A. § 372, n. 16.

21

review of the record indicates that the government presented testimony of the informant and another co-conspirator, Mr. Larry Crow,[13] and a tape recording to support the charge of solicitation. According to the record, Mr. Lampley inquired if he could count on the informant's participation and asked the informant to be responsible for the actual "blowing up" or detonation of explosives. R., Vol. XVII at 1081-83; Vol. XX at 1764-65. We conclude that this evidence is more than sufficient to sustain a conviction because the jury could reasonably conclude beyond a reasonable doubt that Mr. Lampley solicited the informant.

## V.

Mr. Lampley further argues that the district court erroneously denied his motion for judgment of acquittal based on entrapment. We review the district court's denial of a motion for judgment of acquittal *de novo*, viewing all the evidence and drawing all reasonable inferences in a light most favorable to the government. United States v. Young, 954 F.2d 614, 616 (10th Cir. 1992).

The defense of entrapment prohibits law enforcement conduct which implants a criminal design in an innocent person's mind and induces that person to commit a crime he is otherwise not predisposed to commit. See Jacobsen v.

---

[13] Mr. Crow was originally indicted along with Mr. and Mrs. Lampley and Mr. Baird. At the time of this trial, Mr. Crow was awaiting acceptance of his plea to a lesser charge of misprision of felony and a separate sentencing hearing.

22

United States, 503 U.S. 540, 548 (1992) (citing Sorrells v. United States, 287 U.S. 435, 441 (1932)).  The inquiry in an entrapment defense has two parts:  (1) the lawfulness of the government's conduct, and (2) the defendant's predisposition to engage in the criminal activity.  See United States v. Russell, 411 U.S. 423, 435-36 (1973); Sherman v. United States, 356 U.S. 369, 372, 376-78 (1958).  Mr. Lampley only challenges the sufficiency of evidence of his predisposition, independent of the government's actions, to violate the law by conspiring to build and possess an explosive device.  In making a determination on predisposition, this court focuses on the defendant's propensities to commit the offense; whether the defendant was an "unwary innocent" or an "unwary criminal."  Sherman, 356 U.S. at 372; see United States v. Fadel, 844 F.2d 1425, 1433 (10th Cir. 1988).

The question of entrapment generally is one for determination by the jury.[14] See Mathews v. United States, 485 U.S. 58, 63 (1988).  This court has determined that "the factfinder is traditionally in the better position to evaluate conflicting evidence and determine credibility"; and, therefore, conflicting evidence as to a defendant's predisposition precludes a finding of entrapment as a matter of law. United States v. Madrigal, 43 F.3d 1367, 1370 (10th Cir. 1994), cert. denied, 514 U.S. 1089 (1995).  Entrapment as a matter of law exists only when there is

---

[14] The defense of entrapment was argued to the jury, and the jury was instructed on the law of entrapment.  The defendant does not object to the content of those instructions.

23

undisputed evidence "'which shows conclusively and unmistakably that an otherwise innocent person was induced to commit the act.'" Id. at 1369 (citation omitted) (quoting United States v. Gurule, 522 F.2d 20, 23 (10th Cir. 1975), cert. denied, 425 U.S. 976 (1976)).

The evidence in the record is insufficient to meet the high standard for entrapment as a matter of law; there is no such undisputed evidence in this case. The defense of entrapment was a heavily contested issue during Mr. Lampley's trial. Defendant argued that (1) the government "manufactured" the 18 U.S.C. § 924(c) firearm violation "by inspiring, inciting, persuading, and luring him to purchase firearms"; (2) the government inspired him and induced him to conspire with others to produce an explosive device; and (3) he never solicited the informant, but assuming arguendo that he did, he was induced to solicit the informant to commit a crime of violence. Appellant's Brief at 28-32. The government presented conflicting evidence that (1) Defendant engaged in activities relating to the construction of an explosive device without the informant's knowledge and before the informant was solicited by Defendant to participate in the conspiracy; (2) Defendant solicited the informant to help carry out the conspiracy to build and possess an explosive device; and (3) Defendant carried guns during and in relation to the conspiracy without inspiration from the government. Consequently, we cannot say that Mr. Lampley was entrapped as a

matter of law. The evidence presented in the record is sufficient to support the jury verdict on these facts.

## VI.

Mrs. Lampley challenges the sufficiency of the evidence to support the jury's verdict that she was guilty beyond a reasonable doubt of conspiracy. Again, we review the sufficiency of the evidence *de novo*, viewing the evidence and inferences therefrom in a light most favorable to the government, to determine if a reasonable juror could find beyond a reasonable doubt that the defendant was guilty. Voss, 82 F.3d at 1524-25. This court has recognized "that the conspiracy doctrine is inherently subject to abuse and that the government frequently uses conspiracy to cast a wide net that captures many players." Richardson, 86 F.3d at 1546 (quoting United States v. Evans, 970 F.2d 663, 668 (10th Cir. 1992), cert. denied, 507 U.S. 922 (1993)). To obtain a conviction for conspiracy, the government must prove that (1) there was an agreement to violate the law; (2) the defendant knew the essential objectives of the conspiracy; (3) the defendant knowingly and voluntarily took part in the conspiracy; and (4) the co-conspirators were interdependent. Id. However, the secrecy inherent in the nature of a conspiracy "often requires that elements of the crime be established by

25

circumstantial evidence." Id. (quoting United States v. Andrews, 585 F.2d 961, 964 (10th Cir. 1978)).

Defendant testified that she had little knowledge of the conspiracy and that her knowledge alone was insufficient to satisfy the requirements of conspiracy. She denied that she participated in the conspiracy and submitted that she was arrested, indicted, and convicted merely because of her relationship to Mr. Lampley. A review of the record shows that the government presented conflicting evidence. The government informant testified that Defendant knew the objectives of the conspiracy when she participated in a discussion with Mr. Lampley and the informant on September 30, 1995, concerning the Department of Human Services as a potential bombing target. This testimony and a tape recording revealed that Mrs. Lampley suggested it was necessary to call in a bomb threat before detonation in order to save the lives of children in the building. She stated that it was essential the clock was accurate to ensure this warning would save lives. The informant also testified, and a tape recording confirmed, that on November 8, 1995, Mr. Lampley said his wife knew everything and had a right to know if she was going to risk her life. Additionally, the informant testified that on November 7, 1995, Mrs. Lampley helped "cook" ammonium nitrate in her oven to remove its moisture and prepare it as an explosive. R., Vol. XVII at 1143-44; Vol. XIX at 1532-34. The record reflects that the temperature in the oven was 150 degrees, as

26

indicated on a thermometer held by Mrs. Lampley and displayed to the informant. There is also some record evidence that Mrs. Lampley made a photocopy of a recipe for an explosive device and handed it to the informant. Finally, pursuant to a search warrant, law enforcement officers seized evidence in plain view from the Lampleys' trailer and church building. According to the record, this evidence consisted of the following: A recipe for "cookies" on the table in the trailer where Mr. and Mrs. Lampley slept, which turned out to be a recipe for C-4, an explosive substance; the Anarchists Cookbook in the same trailer on the unmade bed Defendant testified she had slept in the previous night; and a shopping list for fertilizer and nitromethane, ingredients for an explosive device, on the table in the same trailer. Although more than one reasonable inference can be drawn from these facts, a jury could reasonably infer that Mrs. Lampley had knowledge of the objectives and knowingly acted in furtherance of the conspiracy. We conclude that, viewed collectively and in a light most favorable to the government, the record evidence and inferences therefrom are sufficient to support a reasonable jury finding beyond a reasonable doubt that Mrs. Lampley was guilty of conspiracy.

**VII.**

27

Defendants Mr. Lampley and Mr. Baird argue that the district court erred in denying a motion to dismiss because their right to a speedy trial was violated pursuant to the 1974 Speedy Trial Act (the Act), codified at 18 U.S.C. §§ 3161-3174. We review the district court's denial of a motion to dismiss for violation of the Act for an abuse of discretion, and review the district court's compliance with the legal requirements of the Act *de novo*. United States v. Earls, 42 F.3d 1321, 1323-24 (10th Cir. 1994), cert. denied, 514 U.S. 1085 (1995); United States v. Occhipinti, 998 F.2d 791, 796 (10th Cir. 1993).

The issue here turns on the calculation of the days excludable from the seventy-day time limitation provision of the Speedy Trial Act. This provision, section 3161(c)(1), requires that a criminal trial shall commence "within 70 days of the latest of a defendant's indictment, information, or appearance, barring periods of excludable delay." Henderson v. United States, 476 U.S. 321, 326 (1986) (citing United States v. Rojas-Contreras, 474 U.S. 231 (1985)). The Act provides that certain periods of time may be excluded from the computation as allowable delay. Section 3161(h)(1)(F) states that "[a]ny period of delay resulting from other proceedings concerning the defendant, including but not limited to . . . delay resulting from any pretrial motion, from the filing of the motion through the conclusion of the hearing on, or other prompt disposition of, such motion," shall be excluded from computing the proper commencement date for trial. This means

28

that any delay attributable to the filing and resolution of Defendants' pretrial motions is excluded. More importantly, the Act excludes from computation any reasonable period of delay attributable to other co-defendants, absent severance. 18 U.S.C. § 3161(h)(7); see United States v. Tranakos, 911 F.2d 1422, 1426 (10th Cir. 1990).

There were a total of 128 days from the indictment on November 15, 1995, the latest of the indictment, information or appearance, to the commencement of the trial on April 1, 1996. The government's calculations result in forty-one countable days from the date of indictment to the date the trial began. Our own examination of the record, after excluding each defendant's motions and co-defendants' properly attributable motions, reveals fifty-eight countable days from the November 15, 1995 indictment to the date the trial began on April 1, 1996. Either calculation is well within the seventy-day time limit of the Act. Moreover, Defendants do not challenge the issue of excludable days. We conclude that the district court properly denied Defendants' motion to dismiss.

## VIII.

Mr. Baird claims that the district court erred because it did not dismiss Count IV of the indictment, the 18 U.S.C. § 924(c) charge, for prosecutorial vindictiveness. Mr. Baird argues that by seeking a superseding indictment

29

containing the additional charge, the government exhibited vindictive behavior and attempted to punish him for his refusal to plead and for exercising his right to a jury trial. We review the district court's factual findings for clear error and the legal principles which guide the court *de novo*. United States v. Raymer, 941 F.2d 1031, 1039 (10th Cir. 1991). To establish a claim of prosecutorial vindictiveness, the defendant must prove either (1) actual vindictiveness, or (2) a realistic likelihood of vindictiveness which will give rise to a presumption of vindictiveness. See United States v. Goodwin, 457 U.S. 368, 376, 380-81, 384 & n.19 (1982); United States v. Wall, 37 F.3d 1443, 1447 (10th Cir. 1994); Raymer, 941 F.2d at 1040. If the defendant meets this burden, the prosecution then must "justify its decision with legitimate, articulable, objective reasons." Raymer, 941 F.2d at 1040 (citations omitted).

"When a defendant exercises constitutional or statutory rights in the course of criminal proceedings, the government may not punish him for such exercise without violating due process guaranteed by the federal Constitution." Id.; see Goodwin, 457 U.S. at 372; Bordenkircher v. Hayes, 434 U.S. 357, 363 (1978). The inquiry is "whether, 'as a practical matter, there is a realistic or reasonable likelihood of prosecutorial conduct that would not have occurred but for hostility or [a] punitive animus towards the defendant because he exercised his specific legal rights.'" Raymer, 941 F.2d at 1042 (quoting United States v. Gallegos-

30

Curiel, 681 F.2d 1164, 1169 (9th Cir. 1982)).  However, the Supreme Court has generally rejected the presumption of prosecutorial vindictiveness in the pretrial context.  See Goodwin, 457 U.S. at 381-84; Bordenkircher; 434 U.S. at 363-64.  The Supreme Court's conclusions are premised on the realities of the criminal justice system: "[T]he guilty plea and the often concomitant plea bargain are important components of this country's criminal justice system."  Bordenkircher, 434 U.S. at 361-62 (quoting Blackledge v. Allison, 431 U.S. 63, 71 (1977)).  "[I]n the 'give-and-take' of plea bargaining, there is no such element of punishment or retaliation so long as the accused is free to accept or reject the prosecution's offer."  Id. at 363.  The Court has cautioned that "so long as the prosecutor has probable cause to believe that the accused committed an offense defined by statute, the decision whether or not to prosecute, and what charge to file or bring before a grand jury, generally rests entirely in his discretion."  Id. at 364 (footnote omitted).

The record does not support a claim of either actual vindictiveness or the realistic likelihood of vindictiveness that translates to a presumption of vindictive behavior.  According to the record, the government notified Mr. Baird of its intention to add a superseding indictment pursuant to 18 U.S.C. § 924(c)(1) during the November 28 and 29, 1995 detention hearing, and also in a letter to him in December 1995.  The plea negotiations, which took place sometime during

31

the last week of December 1995 and the first week of January 1996, included the inherent offers and rejections of pleas as well as discussions of possible sentencing if Defendant pled guilty or was found guilty at trial. The record also indicates that some evidence supporting the section 924(c)(1) charge against Mr. Baird was not reviewed by the government until after the November 15, 1995 indictment had been returned and, also, was not provided to the government until January 5, 1996. The district court's determination that a presumption of vindictive prosecution was unfounded is not clearly erroneous. Given the Supreme Court's precedent in the pretrial setting, the facts in this case prove neither actual vindictiveness nor a reasonable likelihood of vindictiveness. The district court properly declined to dismiss the superseding indictment based upon prosecutorial vindictiveness.

## IX.

Finally, Defendants Mr. Lampley and Mrs. Lampley challenge, *pro se*, the original jurisdiction of the federal district court to prosecute crimes committed within the States. Their principal argument is that the States are sovereign and the federal government is not authorized to prosecute crimes committed within their borders. The Supremacy Clause, the Civil War, the decisions of the Supreme Court, and acts of Congress make it clear that so long as there is a

constitutionally authorized federal nexus, the federal government is free to act anywhere within the United States. <u>See</u> U.S. Const. art. VI., cl. 2; 18 U.S.C. § 3231; <u>Abbate v. United States</u>, 359 U.S. 187, 192-94 (1959); <u>Moore v. Illinois,</u> 55 U.S. (14 How.) 13, 20 (1852); <u>United States v. Hudson</u>, 11 U.S. (7 Cranch) 32, 33-34 (1812).

To the extent that Defendants' *pro se* briefs can be read to raise a nexus based jurisdictional issue under <u>United States v. Lopez</u>, 514 U.S. 549 (1995), the indictment and the record clearly establish the allegation of interstate commerce.

We affirm the district court with respect to all issues raised by all Defendants in their respective cases.

**AFFIRMED.**