**UNITED STATES COURT OF APPEALS**

**TENTH CIRCUIT**

UNITED STATES OF AMERICA,

    Plaintiff–Appellee,

v.

ARMANDO CHAVEZ-FLORES,

    Defendant–Appellant.

No. 09-3252
(D.C. No. 2:07-CR-20143-CM-3)
(D. Kan.)

**ORDER AND JUDGMENT**[*]

Before **BRISCOE**, **LUCERO**, and **HOLMES**, Circuit Judges.

Armando Chavez-Flores appeals his conviction and sentence after a jury found

him guilty of three drug-distribution charges. He contends that the presence of a United

States Marshal near the witness stand during his testimony deprived him of a fair trial,

and that the district court improperly calculated drug quantity in fashioning his sentence.

We reject both arguments. Exercising jurisdiction under 28 U.S.C. § 1291, we affirm.

---

[*] At the parties' request, the case is unanimously ordered submitted without oral
argument pursuant to Fed. R. App. P. 34(f) and 10th Cir. R. 34.1(G). This order and
judgment is not binding precedent, except under the doctrines of law of the case, res
judicata, and collateral estoppel. The court generally disfavors the citation of orders and
judgments; nevertheless, an order and judgment may be cited under the terms and
conditions of 10th Cir. R. 32.1.

# I

Chavez-Flores was convicted by a jury of: (1) conspiracy to distribute and possession with intent to distribute fifty grams or more of methamphetamine and marijuana in violation of 21 U.S.C. §§ 841(a)(1), (b)(1)(A)(viii), (b)(1)(D), and 846; (2) distribution of methamphetamine in violation of 21 U.S.C. § 841(a)(1) and (b)(1)(C); and (3) possession with intent to distribute five grams or more of methamphetamine in violation of 21 U.S.C. § 841(a)(1) and (b)(1)(A)(viii). When Chavez-Flores testified at trial, a Marshal sat behind the witness chair. Chavez-Flores objected that the presence of the Marshal was prejudicial, but the district court overruled the objection.

A Presentence Investigation Report ("PSR") prepared for Chavez-Flores attributed 5270.55 grams of methamphetamine to him. This figure included methamphetamine from specific deals discussed by confidential sources, and an estimated quantity derived from a drug ledger found on Chavez-Flores when he was arrested. The drug ledger contained information on methamphetamine sales over a sixteen-day period. Using a "conservative estimate" of 1.25 ounces per day as revealed by the ledger, the PSR estimated the conspiracy dealt 140 ounces (or 3968.93 grams) over a sixteen-week period. The drug ledger estimate, specific methamphetamine sales, and relatively small amounts of cocaine and marijuana discovered in Chavez-Florez's residence resulted in a total marijuana equivalent of 10,543.93 kilograms, and a base offense level of 36.

Rejecting Chavez-Florez's argument that he should not be held accountable for the entire sixteen-week period used in the PSR's drug ledger extrapolation because he did not

join the conspiracy until the middle of that time period, the district court sentenced Chavez-Flores to 292 months' imprisonment, at the bottom of his Guidelines range.

## II

Chavez-Flores first argues that the positioning of a Marshal behind the witness stand during his testimony violated his right to due process. We review a district court's decision to restrain a defendant for abuse of discretion. See United States v. Wardell, 591 F.3d 1279, 1293 (10th Cir. 2009). However, because security decisions trigger constitutional concerns, such decisions bear "close judicial scrutiny." Id. (quotation omitted). The ultimate question of whether security procedures violate due process is subject to de novo review. United States v. Lampley, 127 F.3d 1231, 1237 (10th Cir. 1997).

Chavez-Flores relies on case law related to the physical restraint of defendants. Based on principles of due process, a defendant should not be visibly restrained unless the practice is "essential" to courtroom security based on "the circumstances of the particular case." Deck v. Missouri, 544 U.S. 622, 624, 632 (2005). Visible restraints, such as shackles, are "inherently prejudicial." Id. at 635.

However, routine security measures that do not involve physical restraints are not inherently prejudicial "so long as the[] numbers or weaponry [of security personnel] do not suggest particular official concern or alarm." Lampley, 127 F.3d at 1237 (quoting Holbrook v. Flynn, 475 U.S. 560, 569 (1986)). This is because "shackling and prison clothes are unmistakable indications of the need to separate a defendant from the

-3-

community at large, [but] the presence of guards at a defendant's trial need not be interpreted as a sign that he is particularly dangerous or culpable." Holbrook, 475 U.S. at 569. Thus, outside the shackling context, "we normally ask whether what the jurors saw was so inherently prejudicial as to pose an unacceptable threat to defendant's right to a fair trial; if the challenged practice is not found inherently prejudicial and if the defendant fails to show actual prejudice, the inquiry is over." Gardner v. Galetka, 568 F.3d 862, 890 (10th Cir. 2009) (quotation and alteration omitted).

We agree with the district court that the placement of a single Marshal behind the witness stand was not inherently prejudicial. As the district court explained, the Marshal was dressed in plain clothes and behaved unobtrusively, sitting behind the witness stand while Chavez-Flores was "testifying within steps of the jury, court staff, and a door leading to a secured hallway." In Lampley, we permitted the presence of numerous plainclothes Marshals. 127 F.3d at 1237.

The minimal security presence at issue in this case was not inherently prejudicial, but a standard and necessary element of courtroom security. Because Chavez-Flores does not attempt to show actual prejudice, his due process challenge fails. See Gardner, 568 F.3d at 890.

## III

Chavez-Flores also claims that the district court erred in calculating drug quantity for sentencing purposes. "When reviewing a district court's application of the Sentencing Guidelines, we review legal questions de novo and we review any factual

-4-

findings for clear error, giving due deference to the district court's application of the guidelines to the facts." United States v. Martinez, 418 F.3d 1130, 1133 (10th Cir. 2005) (quotation omitted). However, with respect to claims that were not presented below, we review only for plain error. United States v. Smith, 413 F.3d 1253, 1274 (10th Cir. 2005). To prevail on plain error review, a litigant must show that a district court's decision: "(1) is erroneous; (2) is plainly so; and (3) that the error affects substantial rights; if he satisfies these criteria, we may exercise discretion to correct the error only if it seriously affects the fairness, integrity, or public reputation of judicial proceedings." Id. (quotation omitted).

Chavez-Flores advances three distinct challenges to the drug quantity attributed to him. First, he argues that the drug ledger extrapolation erroneously attributes to him sixteen weeks' worth of drug sales—from May 29, 2007, to September 18, 2007— because he was not a member of the conspiracy until July 2007. One witness testified that the first time she saw Chavez-Flores was July 2007 and another witness testified that she met Chavez-Flores "a couple of weeks" after a codefendant moved into her home, which occurred in mid-June. However, two other witnesses placed Chavez-Flores at drug deals going back to January 2007. The district court's use of a May 29 start date was not clearly erroneous.

Second, Chavez-Flores contends that the drug ledger was insufficiently reliable. Because he did not raise this issue before the district court, we review it only for plain error. Although Chavez-Flores points to minor pricing inconsistencies in the ledger, and

-5-

to the existence of cryptic symbols and Spanish slang, the PSR took these factors into account by excluding unclear transactions to arrive at a more conservative estimate. See United States v. Richards, 27 F.3d 465, 469 (10th Cir. 1994) ("a court must err on the side of caution" in calculating drug quantity estimates). Moreover, a controlled buy arranged by law enforcement officials investigating the conspiracy appeared in the ledger, thus providing an additional indication of reliability. See United States v. Dalton, 409 F.3d 1247, 1251 (10th Cir. 2005) (drug quantity estimates permissible if supported by "the facts of the particular case" and "sufficient indicia of reliability"). We conclude that the district court did not err by relying on the ledger.

Third, Chavez-Flores objects that the use of both the ledger estimate and the specific drug sales results in an inflated total because the estimate should already include the specific drug sales. Like the previous argument, we review this claim only for plain error because it was not raised below. We conclude that it was error to calculate drug quantity in this fashion. If a court is using an estimate of daily sales volume, it generally should not add specific sales into that estimate if the specific sales are subsumed by the estimate.

Chavez-Flores provides the following analogy. If we know that a basketball player averaged ten points per game over ten games, and we know that the player scored eight points in one of those games, we would not conclude that he scored 108 points over ten games. The single specific point total is already included in the average, and thus should not be counted independently.

-6-

There are two instances in which the drug ledger and the specific-sale evidence overlap. A confidential source stated that codefendant Javier Hernandez obtained approximately twenty-six ounces of methamphetamine over four weeks in August 2007. One of his aliases, "Muerto," is also listed in the ledger as purchasing $3000 worth of methamphetamine, thus increasing the ledger estimate. The drug ledger also includes a "CI purchase" of $1000 that restates a 27.6 gram purchase described as "CI9 purchased methamphetamine" in the specific sale tally. The drug quantity calculation thus double counts the "CI purchase" and the quantity of methamphetamine purchased by Hernandez in the month of August by including those amounts in the drug ledger estimate, and also adding those sales to the extrapolated total.[1]

Although this methodology was erroneous, it does not warrant reversal under the plain error standard. Even assuming that the second and third prongs of the plain error test are satisfied, Chavez-Flores has not demonstrated that the error "seriously affects the fairness, integrity, or public reputation of judicial proceedings." Smith, 413 F.3d at 1274 (quotation omitted). Although the PSR focused on specific sales near the end of the conspiracy, and used the drug ledger to extrapolate a conservative estimate of methamphetamine sold over the course of the conspiracy, other evidence supported a much higher drug quantity calculation.

_____

[1] The "CI Purchase" was direct double-counting because the same purchase that was used to calculate the drug ledger estimate was also added as a specific purchase. In contrast, Hernandez's September purchases went into the ledger estimate calculation and his August purchases were added as specific purchases.

For example, the PSR reveals that one confidential source purchased approximately thirty to forty pounds of methamphetamine from one of Chavez-Flores' coconspirators. This source reported purchasing methamphetamine directly from Chavez-Flores on five occasions. Another confidential source reported purchasing between one ounce and eight ounces of methamphetamine from Chavez-Flores and his coconspirators on twenty-five to thirty occasions. Yet none of this evidence was factored into the drug quantity calculation contained in the PSR. Trial testimony similarly suggested a much higher drug quantity total.

The district court chose to focus on a limited universe of evidence establishing drug quantity, and was extremely conservative in tabulating that evidence. Although it erred in calculating the quantity revealed by that smaller universe of evidence, a much larger universe of evidence showing a much higher drug quantity was left unanalyzed. In light of this other evidence showing a substantially higher drug quantity, we cannot say that the sentencing process lacked fairness or integrity, nor can we declare that the public reputation of judicial proceedings will be harmed as a result of the court's error.

**IV**

For the foregoing reasons, the judgment of the district court is **AFFIRMED**.

Entered for the Court


Carlos F. Lucero
Circuit Judge

-8-