FILED
United States Court of Appeals
Tenth Circuit

**January 15, 2008**

Elisabeth A. Shumaker
Clerk of Court

PUBLISH

**UNITED STATES COURT OF APPEALS**

**FOR THE TENTH CIRCUIT**

---

UNITED STATES OF AMERICA,

    Plaintiff-Appellee,

    v.

DERRICK A. BURKLEY,

    Defendant-Appellant.

No. 07-6000

---

**APPEAL FROM THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF OKLAHOMA
(D.C. No. CR–06–116–R)**

---

James M. Murphy (Francis R. Courbois, Oklahoma City, Oklahoma, on the brief), Dallas, Texas, for Defendant-Appellant.

Mary M. Smith, Assistant United States Attorney (John C. Richter, United States Attorney, with her on the brief), Oklahoma City, Oklahoma, for Plaintiff-Appellee.

---

Before **TACHA, McKAY**, and **LUCERO**, Circuit Judges.

---

**McKAY**, Circuit Judge.

---

    Following a jury trial, Defendant was convicted of possessing marijuana with intent to distribute in violation of 21 U.S.C. § 841(a)(1) (count one), carrying a firearm during and in relation to a drug trafficking crime in violation of

18 U.S.C. § 924(c)(1)(A) (count two), and being an unlawful user of marijuana in possession of firearms and ammunition in violation of 18 U.S.C. § 922(g)(3) (count three). He was sentenced to a total of 120 months' imprisonment. The district court also entered a verdict and order of forfeiture with respect to the firearms, ammunition, and currency found in Defendant's vehicle at the time of his arrest. We have jurisdiction over this appeal under 28 U.S.C. § 1291.

## BACKGROUND

Defendant's convictions stem from a search of his vehicle pursuant to a traffic stop and arrest. A police officer responding to a disturbance call at the Broadway Village Apartments in Oklahoma City, Oklahoma, was driving approximately one-and-a-half car lengths behind Defendant when Defendant made a right turn from the highway onto the access road for that apartment complex without signaling his intention to turn. The officer, who was driving a marked patrol car, turned into the apartment complex after Defendant. Defendant then began using his turn signal while going around bends and curves in the winding roadway. The officer initiated a traffic stop based on Defendant's initial failure to signal and subsequent use of his turn signal where it was not necessary.

The officer approached Defendant's car and instructed him to roll down his window. When Defendant complied, the officer noticed the strong smell of marijuana emanating from inside of the car. Defendant admitted that he did not have a driver's license. The officer also observed marijuana residue on

Defendant's shirt, and Defendant admitted that he had been smoking marijuana earlier that evening. The officer decided to place Defendant under arrest. Two other officers, having responded to the initial disturbance call at the apartment complex, arrived to assist the arresting officer. Defendant, who is paralyzed from the waist down, informed the officers that he would need them to retrieve his wheelchair from the back seat in order for him to exit the vehicle. Defendant also told the officers that he had a weapon in the car. When the officers opened the back door of the vehicle to retrieve the wheelchair, they observed a .50 caliber Desert Eagle handgun tucked into the folds of the wheelchair and a Carbon-15 handgun on the floorboard, both within Defendant's reach. After assisting Defendant into the wheelchair, one of the officers conducted a patdown search of Defendant and found two baggies of marijuana, a prescription bottle of medication, and over $3000 in cash inside Defendant's pants.

The officers then searched the vehicle. Under the driver's seat, the officers discovered a digital scale and two cell phones, which rang continuously during the search. The officers found a magazine and rounds for the Desert Eagle in the center console and a loaded magazine for the other handgun on the rear floorboard. On the back seat, the officers discovered a black bag containing cash, marijuana, ammunition, and bottles of prescription medication. Hidden under the back seat were five, vacuum-sealed bundles of U.S. currency. The total amount of marijuana found in the vehicle and in Defendant's possession was 157 grams;

the total amount of money was $242,250.

After being arrested and advised of his rights, Defendant told officers that he owned the guns found in his car and carried them for his personal protection. He denied selling drugs, but admitted using marijuana on a regular basis for alleged medicinal purposes. He stated that the money found in the vehicle was given to him by a man he knew only as "Broadway" for the purpose of booking rap groups from St. Louis. Although he claimed to have known Broadway for seven or eight years, Defendant could not provide a last name for Broadway nor give any information regarding Broadway's current whereabouts.

Before trial, the court denied Defendant's motions for suppression of the evidence seized pursuant to the traffic stop and arrest and for severance of count one from counts two and three. The court also denied Defendant's motion for acquittal, which he initially made at the close of the government's case-in-chief. After the jury convicted Defendant on all three counts of the indictment, the district court entered a verdict and order of forfeiture of the firearms, ammunition, and currency found in the search of Defendant's vehicle and sentenced Defendant to a total of 120 months' imprisonment. Defendant now appeals.

## DISCUSSION

Defendant argues that (1) the district court erred in denying his suppression motion, (2) the court erred in denying his motion to sever count one from counts

two and three, (3) there is insufficient evidence to support his convictions on counts one and two, (4) the court erred in denying his motion for judgment of acquittal on count two, and (5) the judgment of forfeiture should be set aside.

## I. Motion to Suppress

In reviewing the district court's denial of Defendant's suppression motion, we defer to the court's factual findings unless clearly erroneous, considering the totality of the circumstances and viewing the evidence in the light most favorable to the government. *United States v. Gama-Bastidas*, 142 F.3d 1233, 1237 (10th Cir. 1998). We analyze traffic stops under the principles articulated in *Terry v. Ohio*, 392 U.S. 1 (1968), "asking first 'whether the officer's action was justified at its inception,' and second 'whether it was reasonably related in scope to the circumstances which justified the interference in the first place.'" *United States v. Botero-Ospina*, 71 F.3d 783, 786 (10th Cir. 1995) (quoting *Terry*, 392 U.S. at 20). The traffic stop of an individual vehicle requires "at least articulable and reasonable suspicion" that the vehicle or an occupant is in violation of the law, *Delaware v. Prouse*, 440 U.S. 648, 663 (1979), but the officer's subjective motivations for making a stop are irrelevant, *Whren v. United States*, 517 U.S. 806, 811-13 (1996). We review the district court's finding of reasonable suspicion for clear error, but we review de novo the ultimate question of reasonableness under the Fourth Amendment. *United States v. Walker*, 941 F.2d 1086, 1090 (10th Cir. 1991).

Defendant argues that evidence obtained from the search of his vehicle should be suppressed because he did not commit a traffic offense under Oklahoma law and therefore the initial stop was unlawful under the Fourth Amendment. An Oklahoma City ordinance prohibits making a turn without signaling, Okla. City, Okla., Municipal Code ch. 32, art. VII, § 32-240 (2007); however, Defendant argues that this ordinance is invalid because it is inconsistent with the state highway code, which prohibits making a turn without signaling "in the event any other traffic may be affected by such movement," Okla Stat. tit. 47 § 11-604(A). Defendant argues that he did not violate this state statute because no evidence was introduced that his failure to signal affected traffic. Defendant further argues that his unnecessary use of turn signals on the apartment access road cannot support a finding of reasonable suspicion to justify the traffic stop.

As an initial matter, we must consider Defendant's motion to certify to the Oklahoma Supreme Court three questions related to the municipal ordinance and state statute in question. Tenth Circuit Rule 27.1(A) provides that, "[w]hen state law permits, this court may: (1) certify a question arising under state law to that state's highest court according to that court's rules; and (2) stay the case in this court to await the state court's decision of the certified question." Oklahoma state law permits the Oklahoma Supreme Court to answer questions of state law "certified to it by a court of the United States . . . if the answer may be determinative of an issue in pending litigation in the certifying court and there is

no controlling decision of the Supreme Court or Court of Criminal Appeals, constitutional provision, or statute of this state." Okla. Stat. tit. 20, § 1602 (2002). However, "[w]e generally will not certify questions to a state supreme court when the requesting party seeks certification only after having received an adverse decision from the district court." *Massengale v. Okla. Bd. of Exam'rs in Optometry*, 30 F.3d 1325, 1331 (10th Cir. 1994). Defendant did not seek certification of the state law questions until his case was on appeal, and we see no compelling reason for certifying these questions now. We therefore deny Defendant's motion for certification.

The district court held that—regardless of the municipal ordinance—Defendant violated state law when he failed to signal his intention to make a right turn off of the highway. We agree. We see nothing clearly erroneous in the court's factual finding that Defendant failed to signal before turning and that the police officer was traveling directly behind him at the time. We also agree with the district court's conclusion that these facts establish a violation of state law, justifying the stop of Defendant's vehicle. Clearly, a vehicle traveling approximately one-and-a-half car lengths behind another vehicle "may be affected" by that vehicle's failure to signal its intention to make a right turn.[1] We thus hold that the officer had ample reason to suspect that Defendant

---

[1] The word "may," used in its ordinary sense, expresses "ability, . . .

(continued...)

-7-

had violated the state statute, and we agree with the district court's conclusion that this reasonable suspicion justified the traffic stop. Because we affirm on this ground, we need not address the district court's alternative conclusion that reasonable suspicion could be based on Defendant's unnecessary use of turn signals on the apartment access road.

## II. Motion to Sever

Defendant argues that the district court erred in denying his motion to sever count one from counts two and three. He argues that his drug-trafficking conviction under count one was based on "prejudicial spillover" from the evidence of his firearm possession under counts two and three and that the improper conviction on count one led to convictions on counts two and three.

---

[1](...continued)
contingency or liability, or possibility or probability," *United States v. Lexington Mill & Elevator Co.*, 232 U.S. 399, 411 (1914) (internal quotation marks omitted) (alteration in original), not certainty or inevitability. "As such, the key words do not project a requirement that a turn movement must affect other traffic but merely that it has the potential of doing so." *State v. Moss*, 649 A.2d 1349, 1350 (N.J. Super. Ct. App. Div. 1994) (finding traffic stop justified where "there was other traffic that to some degree was likely to be affected" by turning vehicle); *see also State v. Cox*, 171 S.W.3d 174, 181 n.7 (Tenn. 2005) (stating in dicta that traffic stop was valid where oncoming traffic and officer traveling behind defendant "could have been affected" by defendant's failure to signal before making left turn); *State v. Seavey*, 564 A.2d 388, 389 (Me. 1989) (defining issue as "not whether this police officer's actions as a driver were in fact affected, but whether the defendant should have concluded that the police car was 'other traffic [that] *may* be affected'" (quoting Me. Rev. Stat. Ann. tit. 29, § 1191) (alteration in original)). We therefore disagree with Defendant's contention that the government was required to prove that traffic was actually affected by his unsignaled turn.

(Appellant's Opening Br. at 15.)

We review the district court's decision to deny severance for abuse of discretion. *United States v. Durham*, 139 F.3d 1325, 1333 (10th Cir. 1998). A defendant seeking reversal on this ground must make an affirmative showing of an abuse of discretion; that is, the defendant "must show actual prejudice resulted from the denial." *United States v. Morales*, 108 F.3d 1213, 1219 (10th Cir. 1997).

We have previously held that trying firearms and drug-trafficking charges together results in "no essential unfairness when the relationship of the charges grew out of the defendant's own conduct." *United States v. Valentine*, 706 F.2d 282, 290 (10th Cir. 1983). We also agree with the district court's conclusion in this case that the count one charge of possession of marijuana with intent to distribute was "inextricably intertwined" with the count two charge of carrying a firearm during and in relation to a drug trafficking offense. (R. Doc. 22 at 2.) *See United States v. Strand*, 617 F.2d 571, 575 (10th Cir. 1980) (upholding denial of severance where "interrelationship of the evidence, vis-a-vis [the two charges], was extremely clear, and, for the most part, inseparable"). Even if the counts had been severed, evidence of Defendant's firearm possession would have been admissible to prove his intent to distribute marijuana, *see United States v. Martinez*, 938 F.2d 1078, 1083 (10th Cir. 1991) (holding that firearm possession is probative of participation in drug distribution because firearms are "'tools of the trade'—that is, means for the distribution of illegal drugs"), and evidence of

Defendant's alleged drug trafficking would necessarily have been admitted in a trial on the charge of carrying a firearm during or in relation to a drug-trafficking offense. Thus, severance would not have eliminated the complained-of prejudice and would have wasted judicial resources. *See United States v. Dirden*, 38 F.3d 1131, 1140 (10th Cir. 1994) (noting that trial courts must weigh any potential prejudice "against the obviously important considerations of economy and expedition in judicial administration") (internal quotation marks omitted). We conclude that the district court did not abuse its discretion by denying Defendant's motion for severance.

### III. Sufficiency of the Evidence

Defendant argues that there was insufficient evidence to support his convictions on counts one and two. We review a challenge to the sufficiency of the evidence de novo, "view[ing] the evidence in the light most favorable to the government in order to determine whether all of the evidence, both direct and circumstantial, together with the reasonable inferences to be drawn therefrom, 'convinces us that a rational factfinder could reasonably have found' the appellant guilty of the crime charged beyond a reasonable doubt." *United States v. Chavez-Palacios*, 30 F.3d 1290, 1293-94 (10th Cir. 1994) (quoting *Jackson v. Virginia*, 443 U.S. 307, 324 (1979). "[W]hile the evidence supporting the conviction must be substantial and do more than raise a mere suspicion of guilt, it need not conclusively exclude every other reasonable hypothesis and it need not negate all

possibilities except guilt." *United States v. Johnson*, 42 F.3d 1312, 1319 (10th Cir. 1994) (internal citation and quotation marks omitted).

"To sustain a conviction of possession with intent to distribute under 21 U.S.C. § 841(a)(1), the government must prove that a defendant: (1) possessed a controlled substance, (2) knew he possessed a controlled substance, and (3) intended to distribute the controlled substance." *United States v. Jenkins*, 175 F.3d 1208, 1215-16 (10th Cir. 1999) (internal quotation marks omitted). Defendant does not contest his knowing possession of marijuana. Rather, he argues that he only possessed marijuana for personal use and that the amount of marijuana found in his vehicle and on his person was insufficient to sustain a conviction for possession with intent to distribute.

As an initial matter, we note that the jury heard expert testimony that the amount of marijuana in this case was more consistent with possession for distribution than possession for personal use. Moreover, Defendant's drug possession was not the only evidence supporting a finding of intent to distribute. In addition to the marijuana, Defendant was in possession of two handguns and a large amount of ammunition, a digital scale, and $242,250 in currency. *See United States v. Sanders*, 341 F.3d 809, 816 (8th Cir. 2003) ("Even a small amount of contraband may combine with circumstantial evidence to support a finding of intent to distribute."); *Martinez*, 938 F.2d at 1083 (holding that firearms, scales, and large sums of cash are probative of participation in drug

distribution because they are "tools of the trade"). Most of the money was bundled in vacuum-sealed bags, and an expert witness testified that drug dealers often bundle money in this way to make it easier to conceal and transport and to avoid detection by drug-sniffing dogs. *See United States v. $242,484.00*, 389 F.3d 1149, 1162 (11th Cir. 2004) ("Wrapping cash in cellophane-type material is a technique known to be used by drug dealers to prevent discovery by drug-sniffing dogs."); *see also United States v. $252,300.00 in U.S. Currency*, 484 F.3d 1271, 1275 (10th Cir. 2007) (stating the fact that a large amount of currency "was bundled in stacks held by rubber bands and wrapped in cellophane . . . must be given significant probative value"). The jury heard evidence from an Internal Revenue Service employee that Defendant had no apparent legitimate source of income, further supporting an inference that the money was derived from drug transactions. Defendant also possessed more than one cell phone, which an expert witness testified is a common practice in the drug trade. *Cf. United States v. Cox*, 934 F.2d 1114, 1121 (10th Cir. 1991) (indicating that possession of pager is evidence of intent to distribute). Defendant asserts that there is an innocent explanation for all of this evidence. However, viewing the evidence in the light most favorable to the government, we conclude that a rational juror could find beyond a reasonable doubt that Defendant knowingly possessed marijuana with the intent to distribute.

On count two, Defendant was convicted of carrying a firearm during and in

relation to a drug trafficking crime in violation of § 924(c). "A firearm is carried 'during and in relation to' the underlying crime when 'the defendant avail[s] himself of the weapon and . . . the weapon play[s] an integral role in the [underlying offense].'" *United States v. Brown*, 400 F.3d 1242, 1249 (10th Cir. 2005) (quoting *United States v. Lampley*, 127 F.3d 1231, 1240 (10th Cir. 1997) (alterations in original). "The 'during and in relation to' standard requires the government to prove a direct nexus between the defendant's carrying of a firearm and the underlying drug crime." *Id.* Thus, the government must prove that "the defendant intended the firearm to be available for use in the offense." *Id.* "'There is no requirement, however, that the drug trafficking crime be the sole reason for the possession of the gun.'" *Id.* (quoting *United States v. Radcliff*, 331 F.3d 1153, 1158-59 (10th Cir. 2003)).

We conclude that there was sufficient evidence to support Defendant's conviction on this count. Defendant "carried" firearms by knowingly possessing and transporting them in his vehicle. *See Muscarello v. United States*, 524 U.S. 125, 126-27 (1998) (holding that the phrase "carries a firearm" "applies to a person who knowingly possesses and conveys firearms in a vehicle"). As to the requirement that Defendant carry the firearms "during and in relation to" a drug-trafficking offense, we note that the handguns and ammunition were within Defendant's reach and were located near marijuana, digital scales, and almost a quarter of a million dollars of likely drug proceeds. "The government can prove

the firearm was readily accessible and that the defendant availed himself of it by showing a close proximity between the firearm and the drugs." *United States v. Miller*, 84 F.3d 1244, 1260 (10th Cir. 1996), *overruled on other grounds by United States v. Holland*, 116 F.3d 1353 (10th Cir. 1997) (internal quotation marks omitted); *see also United States v. Bojorquez-Granillo*, 83 F. App'x 300, 305 (10th Cir. 2003) (affirming § 924(c) conviction where unloaded pistol, ammunition, and cocaine were located in hidden compartment of vehicle's dashboard); *United States v. Andas-Gallardo*, 3 F. App'x 959, 965 (10th Cir. 2001) (finding proximity of loaded firearm in or near center console to drugs on front passenger seat sufficient to prove that defendant carried firearm during and in relation to drug-trafficking crime). A firearm carried while a defendant commits a drug-trafficking crime may facilitate the crime by preventing interference from others. *Brown*, 400 F.3d at 1251. "Drug traffickers may carry weapons to protect their merchandise, their cash receipts, and to intimidate prospective purchasers." *United States v. Nicholson*, 983 F.2d 983, 990 (10th Cir. 1993). As for Defendant's argument that he carried the firearms for personal protection, we note that a defendant need not possess a gun solely for drug-trafficking purposes in order to be convicted under § 924. *See Radcliff*, 331 F.3d at 1158-59; *see also Nicholson*, 938 F.2d at 990 ("[T]he fact that defendant carried the weapon for personal protection when engaged in lawful activities does not negate the effect of its presence during illegal narcotics transactions.")

-14-

Moreover, an experienced police officer testified that the weapons and ammunition found in Defendant's car constituted "a substantial amount of fire power" (Tr. at 188) and in particular that Defendant's .50 caliber handgun was "an extremely powerful firearm" that he did not often see in his duties as a police officer (Tr. at 163). For the foregoing reasons, we hold that the government presented sufficient evidence from which the jury could conclude that Defendant carried the firearms during and in relation to a drug trafficking offense.

## IV. Motion for Judgment of Acquittal

We review the denial of Defendant's motion for judgment of acquittal de novo, viewing the evidence in the light most favorable to the government. *United States v. Austin*, 231 F.3d 1278, 1283 (10th Cir. 2000). "[R]eversal is only appropriate if no rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt." *Id.* (internal quotation marks omitted).

Defendant argues that the district court should have granted his motion for acquittal as to count two of the indictment because count two was based on the count one charge of drug trafficking and the evidence presented at trial could not sustain a conviction on count one. As discussed above, however, we hold that there was sufficient evidence to support a finding of drug trafficking on count one. We also find sufficient evidence to sustain the conviction on count two. We therefore affirm the district court's denial of Defendant's motion for judgment of acquittal.

-15-

## V. Order of Forfeiture

Defendant argues that the order of forfeiture should be set aside because his convictions were based on evidence obtained from an illegal search and seizure and because there was insufficient evidence to support his conviction under count one. For the reasons discussed above, however, we disagree with both of these underlying arguments. We also agree with the district court's conclusion that the government established by a preponderance of the evidence that the forfeited property was used during or derived from Defendant's drug-trafficking activities. *See* 21 U.S.C. § 853. We therefore affirm the verdict and order of forfeiture.

### CONCLUSION

For the foregoing reasons, we **AFFIRM** Defendant's conviction and sentence as well as the verdict and order of forfeiture. We **DENY** Defendant's motion for certification of questions of state law.