<u>**PUBLISH**</u>

**UNITED STATES COURT OF APPEALS**

**March 12, 2019**

**FOR THE TENTH CIRCUIT**

_____

UNITED STATES OF AMERICA,

    Plaintiff - Appellee,

v.

No. 18-8017

DARREN GONZALES,

    Defendant - Appellant.

_____

**APPEAL FROM THE UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF WYOMING**
**(D.C. No. 1:17-CR-00082-ABJ-1)**

_____

William D. Lunn, Tulsa, Oklahoma, for Defendant-Appellant.

Eric J. Heimann, Assistant United States Attorney (Mark A. Klaassen, United States Attorney, with him on the briefs), District of Wyoming, Cheyenne, Wyoming, for Plaintiff-Appellee.

_____

Before **MATHESON**, **MURPHY**, and **CARSON**, Circuit Judges.

_____

**MURPHY**, Circuit Judge.

_____

## I. INTRODUCTION

Darren Michael Gonzales owned and operated Concrete Specialists, Inc. in

Cheyenne, Wyoming. As a side business, he sold cocaine and methamphetamine.

Gonzales used his personal and business bank accounts to launder the proceeds of his drug sales. After extensive investigations by state and federal law enforcement, a federal grand jury charged Gonzales with committing a multitude of drug and financial crimes. He eventually agreed to plead guilty to ten of the fifty-four counts set out in the indictment, specifically including seven counts of concealment money laundering. *See* 18 U.S.C. § 1956(a)(1)(B)(i); *see also United States v. Majors*, 196 F.3d 1206, 1211 (11th Cir. 1999) (noting that § 1956(a)(1)(B)(i) is "referred to as the 'concealment' . . . provision of the money laundering statute."). On appeal, Gonzales asserts, for the first time, that the guilty pleas underlying two of his money laundering convictions, Counts 50 and 52, are not supported by a sufficient factual basis. *See* Fed. R. Crim. P. 11(b)(3). This court rejects Gonzales's arguments at the first step of plain-error review.[1]

*See United States v. Carillo*, 860 F.3d 1293, 1300 (10th Cir. 2017) (holding that

---

[1]The parties on appeal vigorously contest whether Gonzales's merits-based appeal is subject to either one or both of two potential waivers of appellate rights. Appeal waivers do not, however, affect this court's "constitutional or statutory jurisdiction." *United States v. Black*, 773 F.3d 1113, 1115 n.2 (10th Cir. 2014). Because Gonzales's Rule 11(b)(3) claims plainly fail on the merits, "this court exercises its discretion to bypass the relatively complex waiver issue[s] and resolve [Gonzales's] appeal on the merits. *Id.* Such a course of action is appropriate here because the government did not raise the waiver issue until its response brief, a brief that also addressed the merits of Gonzales's appeal. Thus, the decision to bypass resolution of the potential appellate waivers does not cause the government any additional burden. *United States v. Garcia-Ramirez*, 778 F.3d 856, 857 (10th Cir. 2015). In undertaking this path, however, this court again emphasizes it is only appropriate to bypass resolution of a waiver issue in a particularly narrow set of circumstances. *See id.* (cataloging circumstances). Gonzales's appeal just happens to be such a case.

2

to satisfy the plain error standard, the appellant must, as the first step in a four-step journey, demonstrate the district court committed an error). That is, we conclude the district court did not err in finding that Gonzales's guilty pleas to Counts 50 and 52 were supported by a sufficient factual basis. The conduct Gonzales admitted as part of his plea agreement and at the plea colloquy establish the existence of every element of a violation of § 1956(a)(1)(B)(i) as to both relevant counts. Thus, exercising jurisdiction pursuant to 28 U.S.C. § 1291, this court **affirms** the district court's judgment of conviction as to Counts 50 and 52.

## II. ANALYSIS

### A. Standard of Review

Gonzales asserts his concealment money laundering convictions for Counts 50 and 52 are not, in violation of the dictates of Rule 11(b)(3), supported by a sufficient factual basis. "This court reviews alleged violations of Rule 11(b) that were not objected to in the district court under the exacting plain error standard." *Carillo*, 860 F.3d at 1300. To satisfy that exacting standard, Gonzales must show "(1) an error; (2) the error is plain or obvious; (3) the error affects the appellant's substantial rights (i.e., the error was prejudicial and affected the outcome of the proceedings); and (4) the error seriously affects the fairness, integrity, or public reputation of judicial proceedings." *Id.* Gonzales's appeal can be easily resolved at the first step of plain error review because his guilty pleas are supported by an adequate factual basis.

3

## B. Discussion

"Before entering judgment on a guilty plea, the court must determine that there is a factual basis for the plea." Fed. R. Crim. P. 11(b)(3). "To determine whether a factual basis exists for the defendant's plea, the district court must compare the conduct admitted or conceded by the defendant with the elements of the charged offense to ensure the admissions are factually sufficient to constitute the charged crime." *Carillo*, 860 F.3d at 1305. The statutory provision criminalizing concealment money laundering provides, in relevant part, as follows:

> Whoever, knowing that the property involved in a financial transaction represents the proceeds of some form of unlawful activity, conducts or attempts to conduct such a financial transaction which in fact involves the proceeds of specified unlawful activity . . . knowing that the transaction is designed in whole or in part . . . to conceal or disguise the nature, the location, the source, the ownership, or the control of the proceeds of specified unlawful activity . . . shall be sentenced to a fine of not more than $500,000 or twice the value of the property involved in the transaction, whichever is greater, or imprisonment for not more than twenty years, or both.

18 U.S.C. § 1956(a)(1)(B)(i). Section 1956(a)(1)(B)(i) contains the following four elements: (1) defendant "engaged in a financial transaction"; (2) defendant knew "the property involved in that transaction represented the proceeds of his unlawful activities"; (3) "the property involved was in fact the proceeds of that criminal enterprise"; and (4) defendant knew "the transaction was designed in whole or in part to conceal or disguise the nature, the location, the source, the ownership or the control of the proceeds of the specified unlawful activities."

4

*United States v. Garcia-Emanuel*, 14 F.3d 1469, 1473 (10th Cir. 1994) (quotation and alteration omitted); *see also* Pattern Crim. Jury Instr. 10th Cir. 2.73.1 (2011 ed. updated Feb. 2018).

The question then becomes whether the "conduct admitted or conceded by" Gonzales is sufficient to create a factual basis for each of these four elements as to Count 50 and Count 52. *Carillo*, 860 F.3d at 1305. "In assessing factual sufficiency under the plain error standard, this court may look beyond those facts admitted by [Gonzales] during the plea colloquy and scan the entire record for facts supporting his conviction." *Id.*

### 1. Count 50

Count 50 charged Gonzales with wire transferring "$79,836 from Meridian Trust Federal Credit Union account ending in 879 to Meridian Trust Federal Credit Union account ending in 763." The indictment noted the account ending in 763 (i.e., the account into which the funds were transferred) was held in the name of M.G.[2] Finally, the indictment alleged Gonzales conducted this wire transfer knowing (1) it affected interstate commerce; (2) it involved the proceeds of the unlawful distribution of controlled substances, in violation of 21 U.S.C. § 841; (3) the proceeds did, in fact, flow from the illegal distribution of drugs;

---

[2]These initials refer to Gonzales's daughter Michelle. The PSR notes that Michelle, who is "learning disabled" is twenty-two years of age and lives with Gonzales. Both parties in their briefs on appeal contend that the account into which the money was transferred was in Michelle's name.

and (4) the wire transfer was "designed at least in part to conceal and disguise the nature, source, ownership, and control of the proceeds." Paragraph 7.f. of the plea agreement included the following factual basis for Count 50:

> Count 50 - Money Laundering - On February 17, 2016, the Defendant transferred $79,836 from one Meridian Trust Federal Credit Union account he controlled to another Meridian Trust FCU account he controlled. At the time, the Defendant knew that some of the $79,836 involved in this financial transaction had been earned from unlawful drug sales. And the Defendant conducted this financial transaction at least in part to conceal the nature, source, ownership and control of the proceeds of his unlawful drug sales.

Paragraph 7.j. of the plea agreement stipulated that "Meridian Trust Federal Credit Union . . . [is a] financial institution[] engaged in, and whose activities affect, interstate commerce." *See* 18 U.S.C. § 1956(c)(4)(B) (providing that a "'financial transaction' means," inter alia, "a transaction involving the use of a financial institution which is engaged in, or the activities of which affect, interstate or foreign commerce in any way.").[3] At the change of plea hearing, the district court read the charge as set out in the indictment and asked Gonzales how he pleaded to the charge. After Gonzales stated he pleaded guilty, the district court asked Gonzales if he adopted the factual basis set out in the plea agreement

---

[3]In advance of the change-of-plea hearing, the government also filed a document titled "Prosecutor's Statement and Elements of the Crime." This document reiterated the factual basis underlying each of the concealment money laundering counts to which Gonzales was pleading guilty and specifically delineated the elements necessary to obtain a conviction for that crime. Thus, to be clear, Gonzales was provided with accurate and easily understood explanations of the elements and key facts of each count of conviction well before the plea colloquy.

6

as his own. Gonzales responded "I adopt the statement." He further stipulated during the hearing that Meridian Trust Federal Credit Union was a "financial institution[] engaged in and whose activities affect interstate commerce."

These admitted facts satisfy all the elements of concealment money laundering. Gonzales admitted wire transferring $79,836 from one account to another at the Meridian Trust Federal Credit Union, a credit union engaged in interstate commerce. For purposes of § 1956, a "transaction" includes a transfer and, "with respect to a financial institution," a transaction includes a "transfer between accounts." 18 U.S.C. § 1956(c)(3). A "financial institution" includes "any credit union." *Id.* § 1956(c)(6) (providing that the term "financial institution" includes those institutions defined in 31 U.S.C. § 5312(a)(2)); *see also* 31 U.S.C. § 5312(a)(2)(E) (providing that "financial institution" means . . . any credit union"). A "financial transaction" includes any "transaction involving the use of a financial institution which is engaged in, or the activities of which affect, interstate or foreign commerce in any way or degree." 18 U.S.C. § 1956(c)(4). Based on these statutory definitions, Gonzales's admission that he transferred money from one account (in his name) to another account (in his daughter's name) undoubtedly qualifies as conducting a financial transaction for purposes of § 1956(a)(1)(B)(i). Additionally, Gonzales admitted he knew the transaction did, in fact, include money earned from drug sales, satisfying the second and third elements of concealment money laundering. Finally, Gonzales admitted he made the transfer at least in part to conceal the nature, source,

7

ownership, and control of the drug proceeds. This admission satisfies the final element of § 1956(a)(1)(B)(i).[4]

Strangely enough, especially given his admission as to his criminal state of mind in undertaking the financial transaction at issue in Count 50, Gonzales objects to the existence of a sufficient factual basis by asserting the factual basis could, hypothetically, describe a lawful transfer of money from one account to another. In so arguing, Gonzales asserts "People transfer money from one bank account to another every day for a variety of perfectly legitimate reasons." Appellant's Opening Br. at 25. As set out above, however, Gonzales specifically admitted the transferred money included drug proceeds and that he made the transfer with intent to conceal its nature (drug proceeds), source (drug sales), ownership (himself), and control (himself).[5] Since all of the elements of the

_____

[4]Although Gonzales's admission as to his state of mind is fully sufficient to support the existence of the fourth element of concealment money laundering, the existence of the element is further supported by Gonzales's admission that the credit union account receiving this transfer was held in the name of his daughter Michelle. That is, the fact Gonzales moved the money from an account in his name to one not in his name, but in his control, fully supports Gonzales's admission that his intent in undertaking the transfer was to conceal the ownership or control of the proceeds.

[5]This court recognizes that if a defendant goes to trial on a charge of concealment money laundering, the government must present substantial evidence of concealment to support a verdict in its favor. *United States v. Garcia-Emanuel*, 14 F.3d 1469, 1473-76 (10th Cir. 1994). By pleading guilty, however, Gonzales specifically "relieved the government of its burden of proving the necessary factual predicate." *United States v. Roe*, 913 F.3d 1285, 1294 (10th Cir. 2019). To the extent Gonzales's brief could be read as asserting that to establish a factual basis for the concealment element the government must do more than demonstrate Gonzales's admission of intent, his argument is

crime were admitted, the district court did not err when it accepted Gonzales's plea to Count 50. *See United States v. Roe*, 913 F.3d 1285, 1294 (10th Cir. 2019) (holding that "a knowing and voluntary guilty plea is an admission of all the elements of a formal criminal charge" (quotation omitted)); *see also United States v. DeFusco*, 949 F.2d 114, 120 (4th Cir. 1991) (holding that when a defendant was repeatedly informed of the elements of the crime, specifically including the intent element, and then admitted the existence of those elements, factual basis for crime was established); *United States v. Guichard*, 779 F.2d 1139, 1146 (5th Cir. 1986) (same).[6]

---

inconsistent with the binding case law cited above. Indeed, rather than cite to cases arising under Rule 11(b)(3), Gonzales's opening brief relies on cases addressing whether various jury verdicts are supported by sufficient evidence. As noted above, however, by pleading guilty, Gonzales specifically relieved the government of that burden. *Id.* In any event, even in the context of sufficiency of the evidence, Gonzales's admission that he acted with the intent to conceal would be sufficient to support a guilty verdict. *See Garcia-Emanuel*, 14 F.3d at 1475 (noting such a guilty verdict can be supported by, inter alia, "statements by a defendant probative of intent to conceal").

[6]In holding that Gonzales's challenge to the factual basis of his guilty plea as to the fourth element (intent to conceal) is foreclosed by his guilty plea, this court notes as follows: (1) the elements of Count 50 (as well as Count 52) were set out specifically and explicitly in the plea agreement, to which Gonzales was a signatory; (2) at the plea hearing, Gonzales stated he had an opportunity to discuss the plea agreement with his attorney before signing it and stated he understood its terms; (3) at no point in the plea hearing did Gonzales equivocate as to the fact that he intended the financial transaction to conceal, at least in part, the nature, source, ownership, and control of the proceeds of his illegal drug distribution. In these circumstances, Gonzales's admissions as to each element of the charged count of concealment money laundering form a sufficient factual basis for his guilty plea for purposes of Rule 11(b)(3). *United States v. Covian-Sandoval*, 462 F.3d 1090, 1094 (9th Cir. 2006) (holding that defendant's admission as to his state of mind as he crossed the border satisfied the mens rea

9

## 2. Count 52

Count 52 charged Gonzales with knowingly accessing and using safety deposit box 42N, located at Meridian Trust Federal Credit Union, to hold cash earned from the unlawful distribution of controlled substances. The indictment further alleged that he did so, at least in part, to conceal the nature, source, and location of these drug proceeds. Finally, the indictment alleged the use of the safety deposit box "affected interstate commerce." Paragraph 7.h. of the plea agreement contained the following factual basis for Count 52:

> Count 52 - Money Laundering - On December 21, 2015, the Defendant accessed safety deposit box 42N located at Meridian Trust FCU in Cheyenne, Wyoming. At the time, the Defendant was knowingly using the safety deposit box to hold cash earned from unlawful drug sales. And the Defendant conducted this financial transaction at least in part to conceal the nature, source, ownership and control of the proceeds of his unlawful drug sales.

Paragraph 7.j. of the plea agreement further stated that "Meridian Trust Federal Credit Union . . . [is a] financial institution[] engaged in, and whose activities affect, interstate commerce." At the change of plea hearing, the district court read the charge as set out in the indictment and asked Gonzales how he pleaded to the charge. After Gonzales stated he pleaded guilty, the district court asked Gonzales if he adopted the factual basis set out in the plea agreement as his own.

---

requirement for the crime of illegal reentry); *see also United States v. O'Hara*, 960 F.2d 11, 13 (2d Cir. 1992) ("[A] reading of the indictment to the defendant coupled with his admission of the acts described in it [provides] a sufficient factual basis for a guilty plea, as long as the charge is uncomplicated, the indictment detailed and specific, and the admission unequivocal." (quotation omitted)).

Gonzales responded "Yes, I do." He further stipulated during the hearing that Meridian Trust Federal Credit Union was a "financial institution[] engaged in and whose activities affect interstate commerce."

These admitted facts satisfy all elements of concealment money laundering. Gonzales admitted to knowingly using safety deposit box 42N at the Meridian Trust Federal Credit Union, a credit union engaged in interstate commerce, "to hold cash earned from unlawful drug sales." For purposes of § 1956, a "transaction" is defined to include, "with respect to a financial institution . . . use of a safe deposit box." 18 U.S.C. § 1956(c)(3). Furthermore, as set out more fully above, *supra* at 7, a financial institution includes any credit union. *Id.* § 1956(c)(6); 31 U.S.C. § 5312(a)(2)(E). Thus, Gonzales's use of safety deposit box 42 is a transaction for purposes of § 1956.[7] Furthermore, as noted above, a transaction amounts to a financial transaction as long as it involves "the use of a financial institution which is engaged in, or the activities of which affect, interstate or foreign commerce in any way or degree." 18 U.S.C. § 1956(c)(4). Gonzales specifically admitted Meridian Trust Federal Credit Union is such an

---

[7]In arguing for a contrary result, Gonzales improperly focuses on the indictment's allegation he accessed the safety deposit box on, or around, December 21, 2015. He asserts that "accessing a safety deposit box does not describe any financial transaction." Appellant's Opening Br. at 22. The fact that he accessed the safety deposit box on that date, however, merely demonstrates that he was "using" it on, or around, that date. As the statutory definitions set out above demonstrate, it is the use of the box that constitutes a transaction for purposes of § 1956 and the mere fact Gonzales did not deposit or withdraw funds from the box on that day is irrelevant.

institution.  For these reasons, Gonzales's admissions clearly evidenced a financial transaction for purposes of § 1956.  Gonzales further admitted he knew the safety deposit box did, in fact, contain the proceeds of unlawful drug sales.  This admission satisfies the second and third elements of concealment money laundering.  Finally, Gonzales admitted he accessed and used the safety deposit box with intent to conceal the nature, source, ownership, and control of the drug proceeds.  This admission satisfies the intent-to-conceal element of § 1956.  *See supra* at 7-9 & accompanying notes (explaining why, under the facts of this case, Gonzales's knowing and voluntary guilty plea to the intent-to-conceal element is sufficient to provide a factual basis for Gonzales's guilty plea).

In attempting to overcome this conclusion, Gonzales raises two related arguments.  First, he claims the "facts suggest that [he] either had the safety deposit box in his name or the name of a close family member.  As a result, his identity could be easily traced to the box."  Appellant's Opening Br. at 22.  This argument fails because, to obtain a conviction for concealment money laundering, there is no requirement that the financial transaction conceal anyone's identity.  *United States v. Lovett*, 964 F.2d 1029, 1034 n.3 (10th Cir. 1992) (holding that "the money laundering statute is not aimed solely at commercial transactions intended to disguise the relationship of the item purchased with the person providing the proceeds; the statute is aimed broadly at transactions designed in whole or in part to conceal or disguise *in any manner* the nature, location, source, ownership or control of the proceeds of unlawful activity").  Gonzales also

12

contends the factual basis failed "to describe how [he] did anything with the illegally-obtained funds kept in the safety deposit box to convert them to some form of legitimate wealth." Appellant's Opening Br. at 23. Gonzales is simply wrong in asserting the government must prove such conduct (conversion to legitimate wealth) to obtain a conviction for concealment money laundering. A defendant is guilty of violating § 1956(a)(1)(B)(i) if he conducts a financial transaction involving criminal proceeds with intent to conceal in any manner the nature, source, location, ownership, or control of the criminal proceeds. *Lovett*, 964 F.2d at 1034 n.3; *Garcia-Emanuel*, 14 F.3d at 1473. It is not necessary that the money laundering transaction make the criminal proceeds appear to be legitimate; it is enough that the transaction is intended to conceal one of the statutory attributes. Gonzales specifically admitted that he undertook the transaction with just such an intent.

### III. CONCLUSION

For those reasons set out above, the judgment of conviction as to Counts 50 and 52 entered by the United States District Court for the District of Wyoming is hereby **AFFIRMED**.

13