**FILED**
**United States Court of Appeals**
**Tenth Circuit**

**April 17, 2025**

**Christopher M. Wolpert**
**Clerk of Court**

**UNITED STATES COURT OF APPEALS**

**FOR THE TENTH CIRCUIT**

_____

UNITED STATES OF AMERICA,

  Plaintiff - Appellee,

v.

AMANDA CHRISTINE GRAY,

  Defendant - Appellant.

No. 24-8033
(D.C. No. 2:23-CR-00129-NDF-1)
(D. Wyo.)

_____

**ORDER AND JUDGMENT***
_____

Before **BACHARACH**, **BALDOCK**, and **McHUGH**, Circuit Judges.
_____

Defendant-Appellant Amanda Christine Gray appeals from the judgment of the

district court sentencing her to a total term of 120 months' imprisonment: 60 months for a

violation of 21 U.S.C. § 841(b)(1)(C) (conspiracy to distribute fentanyl) and 60

consecutive months for a violation of 18 U.S.C. § 924(c)(1) (carrying a firearm during

and in relation to a drug trafficking crime). Ms. Gray pleaded guilty to both charges. On

appeal, she contends there was not a sufficient factual basis to support her guilty plea to

---

* After examining the briefs and appellate record, this panel has determined
unanimously that oral argument would not materially assist in the determination of
this appeal. _See_ Fed. R. App. P. 34(a)(2); 10th Cir. R. 34.1(G). The case is therefore
ordered submitted without oral argument. This order and judgment is not binding
precedent, except under the doctrines of law of the case, res judicata, and collateral
estoppel. It may be cited, however, for its persuasive value consistent with Federal
Rule of Appellate Procedure 32.1 and Tenth Circuit Rule 32.1.

the § 924(c)(1) charge because the facts supporting her guilty plea—including that she was found in her vehicle with fentanyl and a gun in her driver's side door—did not create a sufficient nexus between the conspiracy to distribute fentanyl and the gun.

For the reasons explained below, we disagree and, accordingly, affirm.

## I.    BACKGROUND

On August 3, 2023, just before 11:00 p.m., a Cheyenne Police Department officer noticed a parked vehicle was running in a parking lot. The officer approached and saw Ms. Gray inside the car, slumped over and asleep in the driver's seat. When the officer made contact, she opened the car door to speak with him, and he saw a handgun inside the driver's side door. As she spoke, the officer noticed she was pale, her speech was slurred, and she kept nodding off. The officer asked if she had used fentanyl and she responded she had. Indeed, the officer could observe in plain view in the center console of Ms. Gray's vehicle objects commonly used to smoke fentanyl. He arrested her for driving under the influence. A subsequent search of Ms. Gray's vehicle turned up approximately 20.05 grams (183 pills) of a substance that tested positive for fentanyl. The search also uncovered $1,300 in cash.

The day following her arrest, Ms. Gray spoke to law enforcement agents. She stated she was addicted to opioids and used six fentanyl pills per day but had at one time used ten per day. She admitted the handgun in her car belonged to her and was for self-protection against an ex-boyfriend. She also shared that she was currently in a relationship with Amanda Piercy, who had previously been addicted to methamphetamine but was now "clean." ROA Vol II. at 22. Unbeknownst to Ms. Gray,

an ongoing investigation into a fentanyl distribution ring in the Cheyenne area had connected Ms. Piercy's phone number to numbers associated with the distribution ring, and Ms. Piercy had been surveilled meeting with a member of the ring.

A few weeks later, Ms. Gray was stopped while driving and a police dog alerted to controlled substances in her vehicle. The officers seized fentanyl, methamphetamine, and her cell phone. An analysis of the cell phone's text message data connected Ms. Gray along with Ms. Piercy to the distribution of fentanyl and methamphetamine.

## II.    PROCEDURAL HISTORY

On September 20, 2023, a grand jury returned a three-count indictment charging Ms. Gray with possession with intent to distribute fentanyl, being an unlawful user of a controlled substance in possession of a firearm, and carrying a firearm during and in relation to a drug-trafficking crime, all stemming from the initial August 3, 2023, traffic stop. A superseding indictment returned on November 15, 2023, added a count for conspiracy to distribute fentanyl. Ms. Gray was transferred to federal custody on November 27, 2023, and on December 1, she entered not guilty pleas.

On February 7, 2024, the Government filed a plea agreement under which Ms. Gray agreed to plead guilty to conspiracy to distribute fentanyl and carrying a firearm during and in relation to a drug trafficking crime. On February 20, 2024, Ms. Gray appeared before the district court for her change of plea hearing.

At the hearing, the district court reviewed the elements of the two counts to which Ms. Gray had agreed to plead guilty. After establishing the factual basis for the

conspiracy charge, the court engaged in the following colloquy with Ms. Gray concerning

the factual basis for the § 924(c)(1) charge:

> THE DEFENDANT [Ms. Gray]: At the time of my arrest[,] I was parked in a parking lot after dropping off a friend at a drug testing clinic, and I was gathering myself to drive home. I had fallen asleep. . . .
>
> THE COURT: All right. So you were in a parking lot. You had dropped a friend off at a drug testing place. Did you have fentanyl in your possession at that time?
>
> THE DEFENDANT: I did.
>
> THE COURT: And did you have a firearm in your possession at that time?
>
> THE DEFENDANT: I did.
>
> THE COURT: Were both of those, like, in your vehicle where you had fallen asleep?
>
> THE DEFENDANT: They were in my car, yes.
>
> THE COURT: All right. Mr. Hardee.
>
> MR. HARDEE [Defense Counsel]: Your Honor, I would just supplement briefly. Ms. Gray, let's move back up to Count One. You testified or offered statement to the Court that you had become involved in an agreement. And the purpose of that agreement was to what?
>
> THE DEFENDANT: I mean, it was mainly I was getting fentanyl for myself, and there were a couple people that were helping me to finance it for myself.
>
> MR. HARDEE: And so there was . . . as part of the agreement, you acquired, possessed, and also further distributed . . . fentanyl?
>
> THE DEFENDANT: Yes.
>
> MR. HARDEE: And did you know that it was fentanyl?
>
> THE DEFENDANT: Yes. . . .
>
> MR. HARDEE: Okay. Moving on to Count Four, you did know that . . . you had possessed this firearm previous to August 3rd of 2023?

4

THE DEFENDANT: Yes, I did.

MR. HARDEE: I believe you had offered a statement to the Court that you knew that you possessed it because you used it for personal defense?

THE DEFENDANT: That was my reasoning in purchasing it, yes.

MR. HARDEE: Okay. So it was your firearm?

THE DEFENDANT: Yes.

MR. HARDEE: And it was present in your driver's side door at the time you were contacted by law enforcement?

THE DEFENDANT: It was.

ROA Vol. III at 28–31.

Ms. Gray then pleaded guilty to both conspiracy to distribute fentanyl and carrying a firearm during and in relation to a drug trafficking offense. After the court accepted her plea, defense counsel and the Government supplemented the factual basis through further testimony:

MR. HARDEE: 183 pills in your possession at one time on September 3rd of 2023; that's accurate, correct?

THE DEFENDANT: That sounds about right, yes.

MR. HARDEE: Okay. Now, during the course of this conspiracy . . . would it be unusual for you to be in possession of this amount . . . this number of pills, or roughly 20 grams, of fentanyl . . . it would be common for some of that to end up in the hands of other individuals?

THE DEFENDANT: Um, very little, but yes.

MR. HARDEE: There would be distribution beyond your personal use?

THE DEFENDANT: Very little, but yes. The answer is yes.

*Id.* at 35.

Next, the probation office prepared a presentence investigation report ("PSR").

5

The PSR recommended an enhancement for obstruction of justice based on evidence that Ms. Gray had convinced another inmate at the Laramie County Detention Center, where she was held prior to her federal indictment, to sign a statement averring the firearm Ms. Gray was found with belonged to an individual named Anthony Bryant. Ms. Gray objected to the PSR's inclusion of an obstruction of justice enhancement but "proffer[ed] no evidence as to why it is not applicable," ROA Vol. II at 53, and a revised PSR continued to recommend the enhancement.

Ms. Gray's sentencing hearing was held on May 13, 2024. At the hearing, Ms. Gray renewed her objection to the obstruction enhancement, and the Government called Task Force Officer (TFO) Ryan Wyskochil to provide factual testimony to support the enhancement. TFO Wyskochil testified he monitored Ms. Gray's phone calls following her August arrest, and during these phone calls, Ms. Gray asked individuals to state that the handgun recovered belonged to Mr. Bryant. In one call, Ms. Gray asked an individual named Jackson Woods if his father reported the handgun stolen, and talked about "put[ting] the handgun on Anthony." ROA Vol. III at 46. After monitoring that phone call, TFO Wyskochil interviewed Mr. Woods, who told him that he traded the handgun to Ms. Gray in exchange for fentanyl and marijuana about one week prior to Ms. Gray's arrest. The court concluded the obstruction enhancement applied based on the testimony.

The court sentenced Ms. Gray to 60 months in prison for the conspiracy charge and 60 months for the firearm charge, to be served consecutively, with five years of

supervised release to follow. The court entered judgment on May 13, 2024, and Ms. Gray

timely appealed.

### III.    STANDARD OF REVIEW

Federal Rule of Criminal Procedure 11(b)(3) provides "the court must determine

that there is a factual basis for the [guilty] plea" before entering judgment on it. As a

general matter, the "acceptance of a guilty plea is deemed a factual finding that there is

an adequate factual basis for the plea [and] review [is] under the clearly erroneous

standard." *United States v. Blair*, 54 F.3d 639, 643 (10th Cir. 1995) (alterations in

original) (quoting *United States v. Adams*, 961 F.2d 505, 509 (5th Cir. 1992)). But if a

defendant fails to object to the adequacy of the evidence before the district court, plain

error review applies. *See, e.g.*, *United States v. Landeros-Lopez*, 615 F.3d 1260, 1263

(10th Cir. 2010).

Here, Ms. Gray did not object to the sufficiency of the evidence supporting her

§ 924(c)(1) charge before the district court. Because Ms. Gray did not object to the

factual basis supporting her guilty plea before the district court, our review is for plain

error. *See United States v. Gonzales*, 918 F.3d 808, 811 (10th Cir. 2019); *Landeros-*

*Lopez*, 615 F.3d at 1263.[1]

---

[1] Ms. Gray does not dispute this precedent, nor the fact that she failed to object to the factual basis for her § 924(c)(1) plea before the district court, but argues that the clear error standard used in *Blair* applies here because "[t]he *Blair* opinion does not indicate that there had been any objection below or any procedural move in the district court such as an attempt to withdraw the plea prior to sentencing to indicate an objection to the entry of the plea prior to raising the issue on direct appeal." Reply Br. at 2. But an intervening Supreme Court decision established plain error review applies when a defendant raises a Rule 11 error for the first time on appeal. *See*

To satisfy plain error review, Ms. Gray must show: "(1) an error; (2) the error is plain or obvious; (3) the error affects [her] substantial rights (i.e., the error was prejudicial and affected the outcome of the proceedings); and (4) the error seriously affects the fairness, integrity, or public reputation of judicial proceedings." *Gonzales*, 918 F.3d at 808 (quotation marks omitted). When a court determines a guilty plea is "supported by an adequate factual basis," an appeal can "be easily resolved at the first step of plain error review." *Id.*

## IV.    ANALYSIS

First, we discuss our case law concerning whether a factual basis exists for a § 924(c)(1) charge. Next, we apply that law to Ms. Gray's arguments and conclude the plea is adequately supported.

### A.    *Applicable Law*

"To determine whether a factual basis exists for the defendant's plea [under Rule 11(b)(3)], the district court must compare the conduct admitted or conceded by the defendant with the elements of the charged offense to ensure the admissions are factually sufficient to constitute the charged crime." *Gonzales*, 918 F.3d at 811–12 (quotation marks omitted). "This rule is intended to ensure the accuracy of the plea through some

---

*United States v. Vonn*, 535 U.S. 55, 61–62 (2002). Our post-*Vonn* case law accordingly applies plain error review to unobjected-to Rule 11 violations, including asserted violations of Rule 11(b)(3). *See, e.g.*, *United States v. Gonzales*, 918 F.3d 808, 811 (10th Cir. 2019).

evidence that a defendant actually committed the offense." *Landeros-Lopez*, 615 F.3d at 1263 (internal quotation marks omitted).

Section 924(c)(1) adds an additional five-year mandatory minimum sentence when "any person who, during and in relation to any . . . drug trafficking crime . . . uses or carries a firearm, or who, in furtherance of any such crime, possesses a firearm." 18 U.S.C. § 924(c)(1). We have explained that:

> A firearm is carried 'during and in relation to' the underlying crime when the defendant avail[s] himself of the weapon and . . . the weapon play[s] an integral role in the [underlying offense]. The 'during and in relation to' standard requires the government to prove a direct nexus between the defendant's carrying of a firearm and the underlying drug crime. Thus, the government must prove that the defendant intended the firearm to be available for use in the offense. There is no requirement, however, that the drug trafficking crime be the sole reason for the possession of the gun.

*United States v. Burkley*, 513 F.3d 1183, 1189–90 (10th Cir. 2008) (alterations in original) (internal quotation marks and citations omitted).

In *Burkley*, the defendant was convicted after a jury trial of possessing marijuana with intent to distribute and carrying a firearm during and in relation to a drug trafficking crime in violation of § 924(c)(1). *Id.* at 1185. His convictions stemmed from a search of his vehicle after a traffic stop and arrest, which turned up two firearms within the defendant's reach, marijuana, drug paraphernalia, and cash. *Id.* On appeal, the defendant argued that there was insufficient evidence to support the § 924(c)(1) conviction. *Id.* at 1188–90. We disagreed. First, we held that the defendant "'carried' firearms by knowingly possessing and transporting them in his vehicle." *Id.* at 1190 (citing *Muscarello v. United States*, 524 U.S. 125, 126–27 (1998)). We further determined the

"during and relation to" element was met because the firearms were within the defendant's reach and were located near the drug paraphernalia and money. *Id.* We explained that "[a] firearm carried while a defendant commits a drug-trafficking crime may facilitate the crime by preventing interference from others" and by "protect[ing] the [dealer's] merchandise." *Id.* (quotation marks omitted). And finally, we concluded that "a defendant need not possess a gun solely for drug-trafficking purposes in order to be convicted under § 924," and rejected an argument that because the weapon was used primarily for self-defense it was not also carried "during and in relation to" the underlying crime. *Id.*

Similarly, in *United States v. Winder*, 557 F.3d 1129, 1131 (10th Cir. 2009), the defendant was convicted for violating § 924(c) when he was found with "guns, drugs, and other paraphernalia" in his vehicle. He appealed, contesting the sufficiency of the evidence, and we affirmed. *Id.* at 1132. We noted that the defendant was arrested after attempting to elude the police in his vehicle, which contained "two firearms and a quantity of drugs," one gun on a floorboard and one in a glove box. *Id.* at 1139. "Substantial evidence [] support[ed] the conclusion that [the d]efendant carried the guns 'during and in relation to' a predicate drug trafficking offense," due to the defendant's "ready access to the guns and their proximity to the drugs in the van," because this demonstrated the defendant "intended the firearms to be available for use in the offense." *Id.* (internal quotation marks omitted); *see also United States v. Nicholson*, 983 F.2d 983, 990 (10th Cir. 1993) (holding sufficient nexus existed between drug trafficking crime and gun where gun was located directly underneath the driver's seat of a car that also

10

contained drug paraphernalia and cash); *cf. United States v. Iiland*, 254 F.3d 1264, 1270, 1274 (10th Cir. 2001) (holding evidence insufficient to uphold § 924(c) conviction where defendant's gun was found in apartment along with scales but no other evidence related to underlying drug trafficking offense).

### B.    *Application*

Ms. Gray concedes that there was sufficient evidence of the underlying crime and that she "carried" the gun by storing it in her car but argues the Government did not make the required showing that she carried the weapon "during and in relation to" the underlying drug trafficking offense. Appellant's Br. at 14–16. She contends the Government failed to show that the gun "played an integral role" in the drug offense, even while acknowledging case law that shows we "presume a nexus between a firearm and a drug trafficking offense when an individual with ready access to a firearm is involved in such an offense." *Id.* at 16 (quoting *United States v. Baker*, 30 F.3d 1278, 1280 (10th Cir. 1994)). According to Ms. Gray, "there were no facts that that showed that there was a drug trafficking offense taking place while Ms. Gray was sleeping in her vehicle at the drug testing facility," such as "facts that the individual she had dropped off was a member of the conspiracy," that her car had been used "to transport controlled substances," or "that she was going to or coming from a visit [to] her drug supplier or a drug customer." *Id.* at 17.

For the reasons explained below, we disagree.

11

a.    *Error*

Ms. Gray does not dispute that she was "carrying" the gun when she had it in her vehicle, nor does she dispute the underlying conspiracy conviction. The only question is whether the gun was being carried "during or in relation to" the underlying conspiracy.

The Government argues that because Ms. Gray stated during the sentencing hearing that she possessed both fentanyl pills intended for distribution and her gun, there was a sufficient nexus between the gun and the underlying crime. Appellee's Br. at 16–18. Specifically, the Government emphasizes that the close proximity of the gun to the pills, the fact the pills were going to be distributed, and Ms. Gray's stated use of the gun for personal protection all sufficiently support a nexus. *Id.* at 18–19.

We agree there was a sufficient factual basis for the § 924(c)(1) charge presented at the change of plea hearing. In *Burkley*, we held a sufficient factual basis was provided when the defendant was stopped in his car and found with firearms in arms' reach along with drug paraphernalia. 513 F.3d at 1189–90. We also rejected an argument similar to Ms. Gray's that the gun was not carried "in relation to" the drug trafficking offense where it was intended for self-defense, because "a defendant need not possess a gun solely for drug-trafficking purposes in order to be convicted under § 924." *Id.* at 1190; *see also Winder*, 557 F.3d at 1139 (emphasizing the defendant's "ready access to the guns and their 'proximity' to the drugs" in the car).

While Ms. Gray asserts that the gun was not used "during and in relation to" the conspiracy because she was not in the process of distributing drugs at the moment she was stopped in the parking lot, she fails to identify any cases supporting the argument a

gun must be found both physically proximate to the drugs *and* close in time to a particular drug transaction for there to be a sufficient nexus. *Cf. Burkley*, 513 F.3d at 1190 (holding "close proximity between the firearm and the guns" created sufficient nexus between gun and underlying intent to distribute charge without discussion of whether defendant was in process of a drug transaction when he was initially pulled over for traffic violation); *Winder*, 557 F.3d at 1132, 1139 (holding sufficient nexus existed between gun and underlying intent to distribute charge where the defendant "intended the firearms to be available for use in the offense" but was not directly engaged in transaction at the time of his arrest).

Because Ms. Gray does not dispute that she was found with a gun and drugs in close proximity in her car, and that some of the drugs were intended for distribution, there was an adequate factual basis to support her guilty plea. Accordingly, Ms. Gray has failed to identify an error, much less one that is "plain or obvious," that "affects [her] substantial rights," or "seriously affects the fairness, integrity, or public reputation of judicial proceedings." *Gonzales*, 918 F.3d at 811.

### b.    Error That Affects Substantial Rights

Even if we concluded that there was not sufficient evidence to convict Ms. Gray based on the plea colloquy, Ms. Gray could not identify error that affects her substantial rights based on additional evidence in the record concerning the gun.

As we stated in *Landeros-Lopez*, in determining whether a violation of Rule 11(b)(3) affects a defendant's substantial rights, the court can consider materials prepared after the guilty plea is accepted. 615 F.3d at 1264; *see also United States v.*

13

*Vonn*, 535 U.S. 55, 59 (2002) ("[A] reviewing court may consult the whole record when considering the effect of any error on substantial rights."). "When the record as a whole demonstrates a sufficient factual basis for a plea, any Rule 11(b)(3) error committed by the district court is harmless." *Landeros-Lopez*, 615 F.3d at 1264. Even if we agreed with Ms. Gray that the plea colloquy was insufficient to support her conviction under § 924(c), we would conclude that her substantial rights have not been affected because the post-colloquy record confirms the nexus between the firearm and the underlying conspiracy to distribute fentanyl.

First, the PSR provides that $1,300 in cash was found in Ms. Gray's car and concludes 163 pills were available for distribution based on Ms. Gray's highest reported personal use of 10 pills per day. *See, e.g.*, *Burkley*, 513 F.3d at 1190 (holding nexus established when gun is located near drugs intended for distribution and cash); *Nicholson*, 983 F.2d at 990 ("Drug traffickers may carry weapons to protect their merchandise, their cash receipts, and to intimidate prospective purchasers."). Additionally, unrebutted testimony from TFO Wyskochil established that the firearm seized from Ms. Gray had been exchanged for drugs. This additional evidence unquestionably confirms the gun's nexus to the underlying drug trafficking conspiracy. *See Smith v. United States*, 508 U.S. 223, 237–38 (1993) (holding that exchanging a firearm for drugs constitutes "use" of the firearm "during and in relation to . . . a drug trafficking crime" within the meaning of § 924(c)).[2]

---

[2] Although the Government raised this argument in its answer brief, Ms. Gray failed to respond in her reply.

Therefore, the evidence was sufficient to support the conviction and Ms. Gray has failed to identify error, much less error affecting her substantial rights.

## V.    CONCLUSION

We AFFIRM Ms. Gray's conviction.

Entered for the Court

Carolyn B. McHugh
Circuit Judge